**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 93-9081

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

DONEL MARCUS CLARK, WAYLAND THOMAS WILSON, TERRY DEWAYNE LEVELS,
and LORETA DE-ANN COFFMAN,

Defendants-Appellants.

Appeal from the United States District Court
For the Northern District of Texas

(October 18, 1995)

Before Garwood, Duhé, and Parker, Circuit Judges.

ROBERT M. PARKER:

## I.  FACTS AND PROCEEDINGS BELOW

Appellants Clark, Wayland Wilson, Levels, and Coffman were charged in a superseding 31-count indictment filed September 22, 1992, with committing various drug offenses and conspiring along with Michael Wilson (Wayland Wilson's brother), Bonnie Gill, and Linda Lane to distribute cocaine, crack cocaine, and marijuana. Specifically, in addition to the conspiracy allegation, various Appellants were charged with (1) possession with intent to distribute cocaine, crack cocaine, and marijuana; (2) using

firearms during a drug trafficking crime; (3) using a telephone to facilitate drug trafficking; (4) using a residence located within 1000 feet of a secondary school for the distribution of cocaine and crack cocaine; and (5) money laundering.

A jury trial began on May 17, 1993, concluding on June 10, 1993. After the jury convicted the defendants, the district court held a sentencing hearing on November 12, 1993, issuing the following sentences: (1) Clark- 420 months imprisonment; (2) Wayland Wilson- 444 months imprisonment; (3) Levels- 348 months imprisonment; and (4) Coffman- life plus 60 months imprisonment.

The four Appellants raise a total of 39 points of error on appeal. We affirm.

## II. DISCUSSION AND ANALYSIS

### A. *Sufficiency of the Evidence*

1. <u>Appellant Clark</u>:

Clark claims the evidence was insufficient to support his convictions on Count 1 (conspiracy), Count 25 (telephone count), and Count 26 (school-yard count). On the conspiracy count, the evidence against Clark included: (1) his weighing and packaging crack cocaine; (2) marijuana sales to Clark; and (3) Clark's "cooking" of crack cocaine with Wayland Wilson.

On the telephone count, Clark contends that the entire conversation on which this count is based is about staples which can relate to and be used for any purpose. The government counters that the jury could have reasonably concluded that the staples to be purchased and the packaging discussed related to crack cocaine

2

even though the conversation did not expressly refer to the controlled substance.

On the school-yard count, Clark contends that there was no evidence that he was present at any time at Levels' house, a residence within 1000 feet of a school.  The government responds that (1) in a telephone conversation between Clark and Levels, Clark agreed to go to Level's house to effect a drug transaction; and (2) Clark aided and abetted the commission of drug offenses at Levels' residence.

After viewing the evidence presented and all inferences that may reasonably be drawn from it in the light most favorable to the government, we hold that a reasonably-minded jury could have found Clark guilty of these offenses beyond a reasonable doubt.  *See United States v. Triplett*, 922 F.2d 1174, 1177 (5th Cir.), *cert. denied,* 500 U.S. 945 (1991).

2.  Appellant Wayland Wilson:

Wayland Wilson challenges the sufficiency of the evidence on Count 1 (conspiracy), Count 29 (money laundering), and § 2D1.1(b)(1) of the sentencing guidelines (addition of two points to the offense level for possession of a dangerous weapon in connection with a drug offense).  On the conspiracy count, Wayland Wilson contends that there were actually two conspiracies, one for cocaine and one for marijuana, and that he was involved only with the marijuana conspiracy.  The evidence showed, among other things, that Wilson (1) was a part owner of Motor Market Unlimited where drug money was invested; (2) arranged marijuana transactions; (3)

3

put marijuana proceeds into Motor Market; (4) taught Lane how to weigh marijuana; (5) participated with Clark in making crack cocaine at Lane's house; and (6) owned a briefcase which was found at Motor Market to contain crack cocaine and marijuana.

We have held that if there is only one agreement to carry out the overall objective, even though various parties are engaged in different functions, there is only one conspiracy. *United States v. Rena*, 981 F.2d 765, 770 (5th Cir. 1993). Moreover, a single agreement may have as its objective the selling of two different drugs. *See United States v. Vasquez-Rodriguez*, 978 F.2d 867, 871 n.1 (5th Cir. 1992). The evidence need not exclude every reasonable hypothesis of innocence. *Triplett*, 922 F.2d at 1177. Therefore, a reasonably-minded jury could have found Wayland Wilson guilty of conspiracy beyond a reasonable doubt. *Id.*

On the money laundering count, Wayland Wilson contends that the fact that his brother Michael spent $53,000 in cash on a house titled in the name of Michael Wilson, Wayland Wilson, and Bonnie Gill does not support a conviction for money laundering. To support a conviction under 18 U.S.C. § 1956(a)(1)(A)(I), the government must show that (1) drug money was used to buy the house, and (2) the house was purchased with the intent to promote further drug trafficking. Bonnie Gill testified that the $53,000 was drug money. She also testified that Koda Cook was "working" at that house. When asked to elaborate, Gill testified that Cook would "run errands," including drug trafficking, from that location. The evidence was thus sufficient to support the conviction.

4

On the offense level issue, Wayland Wilson argues that there was no nexus between any firearms and the drug offenses. However, a loaded shotgun was found at Motor Market, and the district court found that the weapons were used to protect the drugs and drug proceeds at that location. The district court's finding is "essentially a factual determination reviewable under the clearly erroneous standard. If the weapon was present at the scene of the transaction, the adjustment should be applied unless it is clearly improbable that the weapon was connected to the offense." *United States v. Rodriguez*, 62 F.3d 723 (5th Cir. 1995). The district court's finding was not clearly erroneous.

3. <u>Appellant Levels</u>:

Levels challenges the sufficiency of the evidence on Count 1 (conspiracy), Count 7 (gun count), and Count 26 (school-yard count). On the conspiracy count, Levels summarily argues that the record does not establish a multiple conspiracy as alleged. The evidence showed, among other things, that Levels (1) "cooked" crack cocaine with Michael Wilson; (2) assisted in counting drug money; and (3) admitted his participation in the drug operation to an IRS special agent. Again, a single agreement may have as its objective the selling of two different drugs. *See Vasquez-Rodriguez*, 978 F.2d at 871 n.1. The evidence thus supported the conviction.

On the gun count, Levels argues that there was no evidence that he used any firearms in any phase of drug trafficking. He claims that he lived in a rough neighborhood and that it is

5

consistent with the evidence that the three firearms seized from his house could have been needed for protection.  However, "use" does not require proof of actual use but simply that the weapons could have facilitated the drug offense.  *United States v. Pace*, 10 F.3d 1106, 1117 (5th Cir. 1993), *cert. denied*, 114 S. Ct. 2180 (1994).  Furthermore, once again, the evidence need not exclude every reasonable hypothesis of innocence.  *Triplett*, 922 F.2d at 1177.  The evidence was therefore sufficient to support the conviction.

On the school-yard count, Levels argues that the statute refers to "secondary" schools and that the school at issue is a "middle" school.  Therefore, he argues, the statute does not apply to the given facts.  The statute reads "public or private elementary, vocational, or secondary school, or a public or private college, junior college or university, or a playground. . ."  21 U.S.C. § 860(a).  In this context, it is evident that Congress intended to give the statute wide breadth.  The term "secondary school" comes after "elementary" school and therefore indicates schools above the elementary level, including middle schools.  Therefore, the statute does apply to the middle school in this case.

4.  <u>Appellant Coffman</u>:

Coffman challenges the sufficiency of the evidence on Count 2 (possession), Count 8 (gun count), and Counts 12, 13, and 15 (telephone counts).  The evidence supporting the possession count included a styrofoam cooler containing drugs that was placed

6

outside the back door of Coffman's apartment by Michael Wilson. Because there was no proof that Coffman ever had actual possession of the drugs, the government sought to prove constructive possession. Coffman argues that there was insufficient evidence to support a finding of constructive possession because "mere joint occupancy" is not enough. *United States v. Mergerson*, 4 F.3d 337, 349 (5th Cir. 1993), *cert. denied*, 114 S. Ct. 1310 (1994). However, in addition to the drugs in the cooler, drug paraphernalia (including a scale with Coffman's fingerprints on it) and drug ledgers also were seized from the apartment. Therefore, the evidence showed more than mere joint occupancy and was sufficient to support the conviction.

Coffman's challenge to the conviction on the gun count is also without merit. The verdict was supported by the seizure from Coffman's apartment of an automatic pistol. Again, following Fifth Circuit precedent, this count does not require proof of actual use but simply that the weapon could have facilitated the drug offense. *Pace*, 10 F.3d at 1117. Therefore, the evidence was sufficient.

Coffman argues that the conversations which form the bases for the telephone counts were merely "status reports" and were therefore insufficient to support a conviction. *United States v. Gonzales-Rodriguez*, 966 F.2d 918, 922 (5th Cir. 1992). The conversations consisted of (1) an attempt to reconcile drug ledger entries and amount discrepancies, (2) instructions on how to page Michael Wilson, and (3) the need to move the drugs because of police surveillance. These conversations facilitated the aims of

7

the conspiracy. *Id.* More than the mere conveyance of information, they constituted the actual conducting of the drug operation. The evidence was therefore sufficient to support the convictions.

**B.   *Searches and Seizures***

    1.   <u>The Cooler and Its Contents</u>:

While Coffman was being detained in the parking lot of her apartment complex, a police detective saw Michael Wilson place a styrofoam cooler on the breezeway outside the rear exit of the upstairs apartment. Without a warrant, the detective retrieved the cooler, which was found to contain cocaine. Coffman argues that the evidence should have been suppressed.

Coffman claims that she had a reasonable expectation of privacy in the walkway. The property representative for the apartment complex testified that the walkways were not for the general public's use. However, Coffman did not have control over who came on the walkway but was limited to controlling who came in her apartment. Coffman relies on *United States v. Carriger*, 541 F.2d 545 (6th Cir. 1976). In *Carriger*, a tenant was held to have a reasonable expectation of privacy in the hallway of his locked apartment building. However, the breezeway and stairs in the present case were neither enclosed nor locked. We hold that based on these facts Coffman did not have a reasonable expectation of privacy in the walkway. Thus, Coffman relinquished her interest in the property. *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir. 1973). The cooler and its contents were therefore abandoned property and were properly admitted into evidence. *Id.*

8

2. Wiretapped Conversations:

Coffman and Wayland Wilson complain that their motions to suppress tape recordings of wiretapped telephone conversations should have been granted. They argue that the conversations were not "minimized" as required by law. 18 U.S.C. § 2518(5) and Tex. Code Crim. Proc. art. 18.20. The district court found that, considering the drug jargon used, multiple objects discussed, and close monitoring by the required interim reports to a state district judge, there had been reasonable compliance with the minimization requirement. A district court's determination of whether a certain practice, under the circumstances, is reasonable is a factual determination subject to the clearly erroneous standard of review. *United States v. Moody*, 977 F.2d 1425, 1433 (11th Cir. 1992), *cert. denied*, 113 S. Ct. 1948 (1993). The district court's finding of reasonableness in this case is not clearly erroneous.

3. Illegal Detention:

Police officers went to Motor Market because a wiretap revealed that Michael Wilson was informing members of the conspiracy to destroy evidence. Wayland Wilson complains that he was illegally detained at Motor Market and that therefore the district court should have granted his motion to suppress evidence and statements gathered. However, the detention of Wayland Wilson was necessary to prevent the destruction of evidence while a search warrant for Motor Market was obtained. Sufficient probable cause and exigent circumstances existed to justify the detention. *See*

9

*United States v. Hultgren*, 713 F.2d 79, 87-88 (5th Cir. 1983). Furthermore, once he was detained, Wayland Wilson consented to the search and made voluntary statements concerning his involvement with drug trafficking. Because the initial detention was not illegal, the consented-to search and voluntary statements were also valid. *See id.*

4. <u>Continued Questioning After Request to End Interview</u>:

Wayland Wilson complains that officers continued to question him after he requested to terminate the interview. After Wayland Wilson stated that he wanted to go home, an IRS agent asked Wayland Wilson if he could ask a few more questions. Wayland Wilson responded that he could. The district court concluded that the statements were voluntary and not the result of coercion. We agree. Wayland Wilson was given the Miranda warnings, he stated that he understood them, and he never asked for an attorney. At one point he did ask to go home, but he then consented to further questioning. There was no evidence of any coercion whatsoever. Moreover, even if the continued questioning were improper, the initial portion of the statement would not be affected by the later indication of a desire to stop the interview. Additionally, Wayland Wilson's extensive involvement in the conspiracy was established by other evidence, and any error in this regard was harmless. *See United States v. Arce*, 997 F.2d 1123 (5th Cir. 1993).

## B.  *Double Jeopardy*

### 1.  Lesser-Included Offenses:

Levels argues that possession with intent to distribute is a lesser-included offense of the school-yard statute.  Clark contends that conspiracy is a lesser-included offense of the school-yard statute.  Clark and Wayland Wilson claim that the telephone counts are lesser-included offenses of the conspiracy charge.  Therefore, they argue, the convictions on these charges resulted in multiple punishments for the same conduct in violation of the double jeopardy clause.

Two crimes are to be treated as the same offense unless each crime requires proof of an additional element that the other does not require.  *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180 (1932).  Each of these crimes contains at least one element not found in the others.  Because they require different elements of proof, there is no double jeopardy violation.

### 2.  Administrative Forfeiture:

Wayland Wilson, Clark, and Coffman argue that their property was administratively forfeited prior to sentencing, and that therefore additional punishment violated the double jeopardy clause.  However, the forfeiture was not contested, and we have recently held that "a summary forfeiture, by definition, can never serve as a jeopardy component of a double jeopardy motion." *United States v. Arreola-Ramos*, 60 F.3d 188 (5th Cir. 1995).  Therefore, this argument is without merit.

***D. Sentencing Issues***

    1.  <u>Object Specific Verdict Form</u>:

       Clark, Levels, and Wayland Wilson argue that the district court should have granted requests for an object specific jury charge with respect to the conspiracy count.  The conspiracy charge had three separate objects for cocaine, crack cocaine, and marijuana.  Appellants argue that the general form of "guilty" or "not guilty" precluded the jury from determining of which specific object or objects they were guilty.

    However, a jury's verdict is not invalidated by the failure to submit a special verdict form for a conspiracy count with multiple objects.  *United States v. Fisher*, 22 F.3d 574 (5th Cir.), *cert. denied,* 115 S. Ct. 529 (1994).  In other words, a conviction on a multiple-object conspiracy count may stand if there is sufficient evidence to support a conviction for conspiracy to accomplish any of the charged objects.  *Griffin v. United States*, 502 U.S. 46, 112 S. Ct. 466 (1991).  Therefore, the use of the general form does not invalidate the verdicts.[1]

    2.  <u>Application of Sentencing Guidelines</u>:

       Clark, Levels, and Wayland Wilson argue that the district court's application of the sentencing guidelines was an ineffective means of avoiding error caused by the general verdict form.

---

[1]    Appellants attempt to distinguish these cases on the grounds that an object-specific verdict form was not requested in those cases, whereas they requested such a form.  Even if that were a valid distinction, the form Appellants requested was erroneous in that it did not provide the jury the opportunity to convict on more than one object of the conspiracy.

Punishment for a conviction of a multiple conspiracy may not exceed the statutory maximum for the offense carrying the least severe penalty. *United States v. Cooper*, 966 F.2d 936 (5th Cir.), *cert. denied*, 113 S. Ct. 481 (1992). Thus, if the court sentences the defendant based upon the object of the conspiracy carrying the lower sentence, then any error is avoided. *United States v. Owens*, 904 F.2d 411 (8th Cir. 1990). The district court limited the sentence on the Count 1 conspiracy to the maximum statutory sentence for the object offense providing the least severe punishment (60 months for a marijuana conspiracy conviction). Thus, under *Cooper* and *Owens*, any error was avoided.

3. <u>Determination of Drug Quantity</u>:

Under the sentencing guidelines, a defendant who participates in a drug conspiracy is accountable for the quantity of drugs which is attributable to the conspiracy and reasonably foreseeable to the individual defendant. *United States v. Mitchell*, 31 F.3d 271, 277 (5th Cir.), *cert. denied,* 115 S. Ct. 455 (1994). The commentary to § 1B1.3 of the sentencing guidelines explains that "a defendant is accountable for the conduct (acts and omissions) of others that was both: (I) in furtherance of the jointly undertaken criminal activity; and (ii) reasonably foreseeable in connection with that criminal activity." Coffman and Wayland Wilson argue that the district court failed to make a finding as to the scope of the jointly undertaken activity.

The district court found that "during the conspiracy the conspirators manufactured or distributed with possession with

13

intent to distribute or distributed in excess of 50 kilograms of cocaine base." Furthermore, the addendum to the presentence report, adopted by the district court, stated that as to each Appellant "the jury found the defendant knew the purpose of the conspiracy and willfully joined in it with the specific intent to further its illegal purpose." These statements constitute a sufficient finding of the scope of the jointly undertaken activity attributable to Wayland Wilson and Coffman. *See United States v. Smith*, 13 F.3d 860, 865 (5th Cir.), *cert. denied,* 114 S. Ct. 2151 (1994).

    4. <u>Constitutionality of Sentencing Provisions</u>:

Clark, Levels, and Wayland Wilson argue that the relevant sentencing provisions are unconstitutional due to the disparity in sentencing between crack cocaine and powder cocaine, in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. However, this court has rejected such a challenge. *Fisher*, 22 F.3d at 579-80 ("The impact of crack cocaine is devastating; Congress' decision to punish more severely those who traffic in it is well warranted.").

**E. *Ineffective Assistance of Counsel and Plain Error***

Levels argues that his trial counsel made several serious errors at trial. Specifically, Levels complains that his trial counsel failed to (1) move to suppress Levels' statement to the government; (2) object to a government witness being permitted to testify as to that statement; (3) move to strike this testimony or move for a mistrial or acquittal; and (4) object to the testimony

14

of two witnesses about the distance from Levels' residence to the school yard. Levels also argues that the district court committed plain error in admitting hearsay testimony on the distance from Levels' residence to the school yard, even in the absence of an objection.

As to the ineffective assistance of counsel claim, these claims are resolved on direct appeal only in "rare cases" where the record allows a fair evaluation of the merits. *United States v. Higdon*, 832 F.2d 312, 313-14 (5th Cir. 1987), *cert. denied*, 484 U.S. 1075 (1988). In the present case, the issue was not raised in the district court, and thus no record has been made. Levels is entitled to raise the issue only in a proper motion for habeas corpus relief where the record can be adequately developed.

As to the plain error argument, an appellant who raises an issue for the first time on appeal has the burden to show that there is actually an error, that it is plain, and that it affects substantial rights. *United States v. Olano*, 113 S. Ct. 1770, 1777-78 (1993). If these factors are established, the decision to correct the forfeited error is within our sound discretion, and we will not exercise that discretion unless the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 1778. We find no error in the admission of this testimony that would have affected the fairness, integrity, or public reputation of the district court's proceedings.

15

### F.  Improper Limiting of Cross Examination

Wayland Wilson argues that the district court improperly limited his cross examination of a government witness concerning her understanding of the sentencing guidelines. The witness was Linda Lane, a co-defendant listed on the indictment who had reached an agreement with the government that allowed her to plead to a telephone count with a four-year exposure with the promise that the government would file a downward departure motion under the sentencing guidelines if she cooperated. During cross examination, Wayland Wilson attempted to ask Lane about her knowledge of her potential guideline without cooperation as opposed to her guideline expectation based on her cooperation with the government. The district court refused to allow this cross examination. Wayland Wilson made a proper offer of proof.

The jury was made aware of the lengthy sentences that were possible under the counts against Lane to be dismissed under the plea agreement, as well as the fact that her cooperation might result in the filing of a motion further reducing her exposure. Therefore, the limitation of the additional information was not a clear abuse of the district court's discretion. *United States v. Bryant*, 991 F.2d 171, 175 (5th Cir. 1993). Additionally, even if there were error, it was harmless. *United States v. Cooks*, 52 F.3d 101 , 104 (5th Cir. 1995).

### G.  Comment on Failure to Testify

Wayland Wilson complains that the district court improperly overruled his objection to an FBI agent allegedly commenting on

Wayland Wilson's failure to testify. During cross examination, the agent answered a question with, "I think the best evidence rule would be to have Wayland Wilson answer that question." Wayland Wilson argues that the jury was left to consider why he did not take the stand and testify.

The comment did not have a clear effect on the jury and therefore reversal is not warranted. *United States v. Montoya-Ortiz*, 7 F.3d 1171, 1178 (5th Cir. 1993). Moreover, the district court instructed the jury in its charge that Wayland Wilson was not required to testify and that no inference could be drawn from his election not to testify. The answer was not manifestly intended as a comment on Wayland Wilson's failure to testify, and there is no indication that it had a clear effect on the jury. *Id.* Furthermore, the jury instruction and fact that the trial was lengthy and complex render any error harmless. *Id.*

## H. *Constitutionality of School-Yard Statute*

Levels argues that the school-yard statute is an unconstitutional extension of Congress' regulatory powers under the Commerce Clause. The Ninth Circuit has rejected such an argument in *United States v. Thornton*, 901 F.2d 738 (9th Cir. 1990). The Fifth Circuit has also recognized that "[t]he Congressional intent of this chapter is clear; drug trafficking affects interstate commerce." *United States v. Gallo*, 927 F.2d 815, 823 (5th Cir. 1991). Levels argues that the activities were "purely local," yet offers no authority to rebut the statement of congressional findings in *Thornton* and *Gallo*. Based on those congressional

17

findings, the statute is within Congress' commerce power. *See also, United States v. Lopez*, 2 F.3d 1342, 1366-67 n.50 (5th Cir. 1993) (noting that the school-yard statute is based on federal authority over intrastate as well as interstate narcotics trafficking), *aff'd*, 115 S. Ct. 1624 (1995).

Finding no merit in Appellants' remaining arguments, we do not address them here.

Therefore, the verdicts and sentences are AFFIRMED.