**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 94-11145
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

MICHAEL FITZGERALD WILSON,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas

February 22, 1996

Before KING, STEWART and PARKER, Circuit Judges.

ROBERT M. PARKER:

Appellant Michael Fitzgerald Wilson ("Michael Wilson") was convicted of conspiracy to possess with intent to distribute and distribution of more than 50 grams of crack cocaine, aiding and abetting the use or carrying of a firearm during a drug trafficking crime, three counts of use of a telephone to facilitate a drug trafficking crime, and three counts of aiding and abetting money laundering. The trial court sentenced him to life for the conspiracy conviction, plus four years on the telephone counts and twenty years on the money laundering counts, all to run concurrent

with the life sentence. He was also sentenced to sixty months on the gun count to run consecutive to all other sentences. The trial court imposed five years of supervised release and a $25,000 fine. Michael Wilson appeals. We affirm in part and reverse in part.

FACTS AND PROCEEDINGS BELOW

Michael Wilson was charged with conspiring with Wayland Wilson, Koda Cook, Terry Dwayne Levels, Deann Coffman and Donel Clark to manufacture and distribute crack cocaine, as well as related substantive offenses.[1] Michael Wilson's trial was severed from his co-defendants' trial due to the illness of his first attorney. Following a jury trial, Michael Wilson was convicted on 8 of 12 Counts.

Michael Wilson and his brother, Wayland Wilson, owned a Dallas car dealership called Motor Market. Cook, who began buying cocaine from Michael Wilson in 1989, was hired as a handyman at Motor Market in the Spring of 1990. By the middle of 1991, he was also involved in Michael Wilson's drug business. The co-defendants cooked powder cocaine into crack cocaine, packaged it and distributed it.

In May 1992, law enforcement officers obtained and executed search warrants for Motor Market and various residences, seizing drugs, guns, cars, currency, records of drug transactions and various drug production paraphernalia.

---

[1]We affirmed the convictions of Michael Wilson's co-defendants, Clark, Wilson, Levels and Coffman in *United States v. Clark*, 67 F.3d 1154 (5th Cir. 1995).

SUFFICIENCY OF THE EVIDENCE

Michael Wilson challenges the sufficiency of the evidence to support his convictions on the money laundering counts, the telephone counts and the firearm count.

a. Standard of Review

We must affirm the jury verdicts if a reasonable trier of fact could conclude from the evidence that all the elements of the offenses were established beyond a reasonable doubt, viewing all evidence in the light most favorable to the verdict and drawing all reasonable inferences from the evidence to support the verdict. *United States v. Sanchez*, 961 F.2d 1169, 1173 (5th Cir.), *cert. denied*, 506 U.S. 918, 113 S. Ct. 330, 121 L. Ed. 2d 248 (1992).

b. Money Laundering Counts

Michael Wilson contends that the evidence was insufficient to support his convictions on three money laundering counts, which charge Wilson with violating 18 U.S.C. § 1956(a)(1)(B)(i). In order to convict under (B)(i) the government must prove that Wilson (1) conducted or attempted to conduct a financial transaction, (2) which the defendant knew involved the proceeds of unlawful activity, and (3) with the intent to conceal or disguise the nature, location, source, ownership, or control of the proceeds of unlawful activity. *United States v. Garza*, 42 F.3d 251, 253 (5th Cir. 1994), *cert. denied*, 115 S. Ct. 2263 (1995). The jury returned guilty verdicts on Count 9, which involved the purchase of

a Jaguar automobile, Count 10, a house[2] and Count 11, a boat.

Wilson first contends that there was no evidence that the funds used to purchase these three items were proceeds of unlawful activity or that Wilson knew they were the proceeds of unlawful activity. Wilson characterizes the evidence at trial as establishing only that Wilson used cash for these transactions and that Wilson had income both from legitimate business and from drug transactions.

Second, Wilson contends that the government did not establish the third "concealment" element -- in this case, Wilson's intent to conceal or disguise the nature, location, source, ownership or control of the proceeds of unlawful activity. He relies on language from *United States v. Sanders*, 929 F.2d 1466 (10th Cir.) *cert. denied*, 502 U.S. 846, 112 S. Ct. 143 (1991), which this Court cited with approval in *United States v. Gonzalez-Rodriguez*, 966 F.2d 918, 925 (5th Cir. 1992):

> [B]y the express terms of the [money laundering] statute, a design to conceal or disguise the source or nature of the proceeds is a necessary element for a money laundering conviction.

In *Sanders*, a man and wife purchased automobiles with drug

---

[2] The house was titled in the names Michael Wilson, Wayland Wilson and Bonnie Gill. In *United States v. Clark*, 67 F.3d 1154 (5th Cir. 1995), we considered whether Wayland Wilson's conviction under 18 U.S.C. § 1956(a)(1)(A)(i) was supported by sufficient evidence. There, the question was whether the house was purchased with the intent to promote further drug trafficking and we found that the evidence was sufficient to support the conclusion that it was. *Clark*, 67 F.3d at 1160-1161. Here we consider a separate question: whether the evidence presented during Michael Wilson's trial was sufficient to support a conviction under (B)(i), rather than (A)(i).

proceeds. One of the vehicles was titled in their daughter's name. However, because they readily identified themselves to the sales person and conspicuously used the automobiles "making the association of these vehicles with the [defendants] obvious to law enforcement," the Tenth Circuit reversed their money laundering convictions for failure to prove the concealment element. Similarly, Wilson readily identified himself and his ownership of Motor Market to the sellers of the car, house and boat. The paperwork prepared in connection with those transactions showed Wilson's name on the house title, while title to the car and boat were taken in the name of Motor Market.

The government responds that the jury could reasonably infer that the funds used for the purchases were drug proceeds, based on the evidence that (1) the purchase money was bundled in the same way that the drug organization bundled their cash, (2) Wilson was a principal in large-scale drug trafficking activities, which yielded large quantities of cash, and (3) Cook, a co-defendant, testified that Michael Wilson was selling cocaine for a living when he went to work for Motor Market in the Spring of 1990.

As to the concealment element, there was evidence that Michael Wilson purchased the Jaguar through a broker and asked the seller to tell the IRS that the car was damaged and sold for less than half the actual price. When the house was purchased, Wilson said the cash was from an inheritance, which he told Cook was his "cover" for the cash purchase. Finally, the boat was titled jointly in the names Motor Market and Cook, and Cook testified that

he and Michael Wilson discussed the fact that Cook had received a settlement from his job that could explain the cash purchase.

Having reviewed the record, we conclude that a reasonable jury could have found every element of 18 U.S.C. § 1956(a)(1)(B)(i) on each of these purchases beyond a reasonable doubt.

c. The telephone counts.

Michael Wilson was charged in Counts 4 and 5 with using a telephone to facilitate a drug transaction. The conversations were recorded by means of a wiretap, and the recordings and transcriptions of the conversations were admitted into evidence. The conversation in Count 4 was between Coffman and Michael Wilson. Michael Wilson argues that, assuming the conversation concerned drug dealing, it was a status report about a bookkeeping discrepancy, and thus under *United States v. Gonzalez-Rodriguez*, 966 F.2d at 922, it was insufficient to sustain a conviction. In *United States v. Clark* we rejected this argument. Coffman was convicted for participating in the same conversation which we held was "more than the mere conveyance of information" and "constituted the actual conducting of the drug operation." *Clark*, 67 F.3d at 1162.

The conversation in Count 5 is between Michael Wilson and an unidentified male. Count 5 alleged that Wilson used a telephone to facilitate a felony by discussing with the unknown individual acquisition of a narcotic controlled substance. Wilson asked if another person "still got that thang" and says "call him, let's hear from him." The conversation can reasonably be construed to

6

concern negotiations for the purchase of "that thang." Cook testified that the conversation was between Wilson and David "Dink" Richardson. Cook's testimony ties the conversation to a cocaine delivery that Richardson had previously made for Wilson, which allowed the jury to infer that the "thang" being discussed was cocaine.

We therefore find that Michael Wilson's telephone count convictions were supported by sufficient evidence.

d. The firearm count.

Michael Wilson was convicted in Count 2 of using and carrying a firearm in connection with a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1), based on the seizure of several firearms from a residence owned by Michael Wilson located on Etta Drive. Wilson was not present at the location where the guns were seized, and his fingerprints were not recovered from any of the weapons. No witness testified to seeing Wilson use or carry any of the specific weapons named in Count 2. No drugs were recovered from the location where the weapons were seized, although Cook testified that drug money was counted and stored at the Etta Drive house.

Section 924(c) requires the imposition of criminal penalties if the defendant, "[d]uring and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm." The government argues that conviction under § 924(c)(1) does not depend on proof that the defendant had actual possession of the weapon or used it in any affirmative manner, but only requires that the firearm was available to provide protection to

7

the defendant in connection with his engagement in drug trafficking, citing *United States v. Willis*, 6 F.3d 257, 264 (5th Cir. 1993).

The Supreme Court overruled *Willis* when it recently held that conviction for use of a firearm under § 924(c) requires evidence sufficient to show active employment of a firearm by a defendant. *Bailey v. United States*, 116 S.Ct. 501 (1995). The Supreme Court specifically considered and rejected arguments by the government that § 924(c) criminalized the storing of a weapon near drugs or drug proceeds and concealing a weapon nearby to be ready for imminent confrontation during a drug transaction. *Id.* at 508.

We therefore find the evidence insufficient to support Wilson's conviction on Count 2.

RECUSAL MOTION

Michael Wilson next challenges his convictions on the basis that the district court erred in denying his motion to recuse the trial judge. We review the denial of recusal motions under an abuse of discretion standard. *United States v. Jordan*, 49 F.3d 152 (5th Cir. 1995). We must determine whether a reasonable and objective person, knowing all of the facts, would harbor doubts concerning the judge's impartiality. *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860-61, 108 S. Ct. 2194, 2203, 100 L. Ed. 2d 855 (1988).

Michael Wilson's trial was severed from that of his co-defendants, and the co-defendants were tried first. His recusal motions were based on the fact that the trial judge ruled on a

8

number of motions, including a motion to suppress evidence, in the first trial before Michael Wilson presented substantially identical motions in his trial. The trial court also had access to information in the co-defendants' presentence reports that implicated Wilson prior to Wilson's trial. Wilson particularly focused on a comment made by the district court at the earlier sentencing hearing that "Mike Wilson's primary responsibility was in the cocaine and cocaine base end," alleging that the comments "indicate that the court has predetermined Michael Wilson's guilt in violation of the Due Process Clause of the Fifth Amendment." The trial court summarily denied the motion, noting that "these comments concern Wilson's guilt or innocence, which is a matter that will be determined by a jury, not by the Court."

Wilson's motion acknowledged that the trial court had no personal bias or prejudice, and bases his claim on the Due Process Clause rather than on the recusal statutes, 28 U.S.C. §§ 144 and 455. Although he relies on cases that discuss the recusal statutes, he makes no argument that those statutes were violated. Rather, he implies, without explaining why or citing authority, that his due process right to an impartial tribunal requires reversal in circumstances that pass muster under the statutes and their interpretive case law. The government's reply likewise cites to cases interpreting the recusal statutes and does not respond to Wilson's contention that the Due Process Clause affords him relief not available under the statutes.

Opinions formed during the prior proceedings do not constitute

9

a basis for statutory recusal unless the opinion displays a deep-seated favoritism or antagonism that would make fair judgment impossible. *Liteky v. United States,* ___U.S.___, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994). This Court has recognized that a trial judge is not disqualified because he presided over the trial of a co-defendant or accepted the guilty plea of a co-defendant and that, absent allegations that the judge harbored a personal bias that would disqualify him, the denial of a motion to recuse is not error. *United States v. Partin*, 552 F.2d 621, 639 (5th Cir.), *cert. denied*, 434 U.S. 903, 98 S. Ct. 298, 54 L.Ed.2d 189 (1977).

We see no basis for holding that the Due Process Clause extends the necessity for recusal beyond the statutory requirements in this circumstance. The district court's denial of Wilson's recusal motion was not an abuse of discretion.

### DID FORFEITURE RESULT IN DOUBLE JEOPARDY?

a. Standard of review.

This Court reviews the denial of double jeopardy claims *de novo*. *United States v. Cruce*, 21 F.3d 70, 74 (5th Cir.), *cert. denied*, ___U.S.___, 115 S. Ct. 174 (1994).

b. Administrative forfeiture

Wilson did not file a claim or contest the administrative forfeiture and "a summary forfeiture, by definition, can never serve as a jeopardy component of a double jeopardy motion." *United States v. Clark*, 67 F.3d at 1163, quoting *United States v. Arreola-Ramos*, 60 F.3d 188 (5th Cir. 1995). Wilson contends that he could not afford to post bond. He justifies his failure to file a

10

pauper's affidavit by claiming that it would require him to disclose information that would incriminate him and he chose to invoke his right to remain silent. However, his stated reasons for failing to file a claim are not evident from the record of the forfeiture proceeding, to which he never became a party. There is no basis in the record for distinguishing this case from *Clark*'s holding on administrative forfeiture.

c. Judicial forfeiture.

The property forfeited pursuant to judicial forfeiture was stipulated to be proceeds of illegal activity under 21 U.S.C. § 881(a)(6), rather than property used to facilitate unlawful activity. Wilson's contention that the forfeiture of property derived from drug proceeds should be considered prior punishment was rejected by this Circuit in *United States v. Tilley*, 18 F.3d 295, 300 (5th Cir.), *cert. denied*, 115 S. Ct. 574 (1994).

## AVAILABILITY OF INFORMANTS

a. Standard of review.

The grant or denial of disclosure of an informant is reviewed under an abuse of discretion standard. *United States v. Evans*, 941 F.2d 267, 272 (5th Cir.), *cert. denied*, 502 U.S. 972 (1991).

b. Was the court's order an abuse of discretion?

The three informants who were the subject of Wilson's motion gave information that was included in affidavits supporting applications for wiretaps in this case. Wilson sought to interview them in connection with his motion to suppress evidence obtained by use of wiretaps, or alternatively, moved that the informants be produced

11

for pretrial interviews.  Wilson alleged that the informants had extensive knowledge of the conspiracy.  Wilson concedes that he knew the identity of all of the informants and the location of one of them.

When granting or denying disclosure of the identity or location of an informant, the court's discretion is guided by three factors: (1) the level of involvement in the alleged criminal activity, (2) the helpfulness of disclosure to any asserted defense, and (3) the government's interest in non-disclosure. *Id.* The order denying Wilson's motion noted that Wilson failed to present evidence that makes a substantial preliminary showing of falsifications or misrepresentations in the affidavit, as he must to establish his entitlement to go behind the affidavits. *United States v. Mueller*, 902 F.2d 336, 341 (5th Cir. 1990).  Next the trial court found that the government's reasons for withholding the information were substantial -- the informants' fear for their personal safety, Wilson's pending indictment for witness tampering, and the informants' statements that they did not wish to meet with Wilson or his representative.  Finally, the trial court noted that Wilson failed to produce any evidence or specific allegations of how these informants' testimony might bear on his guilt or innocence.

Finding no abuse of discretion, we affirm.

WIRETAPPED TELEPHONE CONVERSATIONS

Wilson argues that his motion to suppress tape recordings of wiretapped telephone conversations should have been granted because

12

the conversations were not "minimized" as required by law. 18 U.S.C. § 2518(5) and TEX. CODE CRIM. PROC. art. 18.20. At the hearing, the parties adopted the transcript of the hearing on this issue which the trial court held in the *Clark* case. The trial court found that the "Government's conduct in minimization was both objectively and subjectively reasonable." This Court affirmed a similar ruling from the district court in *Clark*. This is a factual determination subject to the clearly erroneous standard of review. *Clark*, 67 F.3d at 1162. There is no basis for distinguishing this case from the holding in *Clark.*

## COCAINE BASE/POWDER COCAINE GUIDELINES

Wilson contends that the district court erred in denying his motion to declare unconstitutional 28 U.S.C. § 991-98, 21 U.S.C. § 841, and U.S.S.G. § 2D1.1 insofar as they establish different sentencing ranges for the distribution of the same amounts of cocaine and cocaine base.

This argument has been foreclosed by Fifth Circuit precedent. *See United States v. Watson,* 953 F.2d 895 (5th Cir.), *cert. denied*, 112 S. Ct. 1989 (1992) (no violation of due process or equal protection); *United States v. Butler*, 988 F.2d 537 (5th Cir.), *cert. denied*, 114 S. Ct. 413 (1993) (not unconstitutionally vague); and *United States v. Fisher*, 22 F.3d 574, 579 (5th Cir.), *cert. denied*, 115 S. Ct. 529 (1994) (not grossly disproportionate under the Eighth Amendment).

Wilson's reliance on a proposed amendment to the Guidelines is likewise without persuasive force. Amendment 505, adopted by the

13

Sentencing Commission, bringing sentencing provisions for crack in line with provisions for powder cocaine, was rejected by Congress and the president. Pub. L. No. 104-38, 109 Stat. 334, Oct. 30, 1995.

CONCLUSION

For the foregoing reasons, we reverse Michael Wilson's conviction and sentence under § 924(c) and affirm all other counts of conviction. Having reviewed the record of Wilson's sentencing, we have concluded that § 924(c) conviction did not impact the calculation of the guideline range or the sentence imposed on the remaining counts of conviciton. We therefore affirm the remaining sentence.

REVERSED in part and AFFIRMED in part.