# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

---

No. 97-20718

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ERIC SYKES HAMPTON, RANDY BAKER,

Defendants-Appellants.

---

Appeal from the United States District Court
for the Southern District of Texas
(H-96-CR-187-1)

---

May 17, 1999

Before KING, Chief Judge, POLITZ and BENAVIDES, Circuit Judges.

POLITZ, Circuit Judge:[*]

Randy Baker and Eric Sykes Hampton were convicted of conspiracy to possess with intent to distribute crack cocaine in violation of 21 U.S.C. § 846. Hampton was additionally convicted of possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a). Baker was sentenced to prison for 360 months, and Hampton was sentenced to 324 months on each count, to be served concurrently. Both timely appealed. We vacate Hampton's conviction and sentence, finding that the trial court committed reversible error in declining to give

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the requested entrapment instruction. We affirm in all other respects.

## BACKGROUND

**A.     Suppression Hearing.**

Before the trial, Hampton moved to suppress crack cocaine found in his vehicle during a traffic stop and to suppress other evidence that came to light as a result of the automobile search.

The following is a condensed summary of the relevant evidence presented at the suppression hearing, viewed in the light most favorable to the government.[1] On August 22, 1996, Deputy Sheriff Jeffrey Head spotted a vehicle -- driven by Hampton, who was accompanied by his girlfriend, Alicia Kelley -- exceeding the posted speed limit. A check on the license plate mistakenly showed that the registration had expired, and a check of the license revealed that Hampton had an outstanding felony warrant for the delivery of a controlled substance. Head arrested Hampton. After reading Hampton his **Miranda**[2] rights, Head asked Hampton whether his vehicle contained any illegal substance; after a fifteen-second pause, Hampton replied in the negative. When Head turned back to the vehicle he saw that Kelley was now sitting in the driver's seat, with the engine running, talking on her cellular phone. Because her license had expired, she had arranged for Hampton's aunt to retrieve the vehicle.

Suspicious of Kelley's obvious concern with removing the vehicle from the

---

[1]**United States v. Inocenio**, 40 F.3d 716 (5th Cir. 1994).

[2]**See Miranda v. Arizona**, 384 U.S. 436 (1966).

scene, and alerted by Hampton's delay in responding to his question, considered in light of the outstanding warrant, Head called for the canine narcotics unit. Within a few minutes the unit arrived and the canine alerted to the glove compartment and a wrapped package in the front of the vehicle. Both were found to contain crack cocaine.

The trial court ruled that the search was lawful, and the case proceeded to trial.

## B.      Trial.

The government's key witness was Ronnie Hopes, Hampton's second cousin. Hopes had been arrested on drug charges on August 7, 1996, and subsequently agreed to cooperate with law enforcement officials.

At trial, Hopes testified that Hampton introduced him to drugs in 1995 and continued to provide him with ½ to one ounce of crack cocaine once or twice per month through 1996. According to Hopes, he began helping Hampton deliver drugs to Baker in early 1996. Hopes would obtain crack cocaine from Hampton and contact Baker; then, Hopes would transport the drugs to Austin, Texas, where Baker lived or, alternatively, Baker would pick up the drugs in Brenham, Texas, where Hopes lived.

In support of this account, the government presented tape recordings of conversations made by Hopes after his arrest. In one such conversation, Hopes told Baker that police officers found the "fourteen, that your girl, from your girl"; Baker responded, "Oh, man." In that same conversation, Hopes asked if Baker and

Hampton planned to do any "business," and Baker vigorously replied, "No, no, no." Hopes explained to the jury that the phrase "fourteen, that your girl, from your girl" was a reference to drugs intended for Baker's girlfriend and that "business" meant drug dealing.

The government introduced additional corroborating evidence including: Hopes' address book, which contained several phone numbers for Hampton and Baker; Hampton's address book, which contained Hopes' and Baker's phone numbers and what appeared to be a drug ledger; and phone records establishing uninterrupted phone contact among Hopes, Hampton, and Baker during the relevant time periods.

Further, the government offered testimony by Ryan Johnson, an agent from the Drug Enforcement Administration. According to Agent Johnson, Hampton confessed to supplying Hopes with crack cocaine since 1995 and confirmed Baker's participation in the drug trade. Also, Agent Johnson testified that Hampton acknowledged familiarity with Baker's and Hopes' phone numbers and conceded that the ledgers accounted for drug transactions. Finally, the government introduced evidence that drug-related paraphernalia with cocaine residue was found at Hampton's residence and that roughly 260 grams of crack cocaine belonging to Hampton were found in Hopes' residence.

Hampton took the stand in his defense. He admitted to prior involvement in the drug trade, including a drug-related arrest in 1991; he acknowledged that even after this arrest, in violation of his terms of probation, he continued to deal drugs.

4

But Hampton claimed to have given up dealing sometime in 1994 at the urging of his family and insisted that he had turned his life around. According to Hampton, it was only because of persistent pleading by Hopes, who allegedly told Hampton that he desperately needed to raise money for his legal defense, that Hampton agreed to sell the drugs found in his automobile. Otherwise, Hampton denied supplying Hopes with drugs; denied that the drugs found in Hopes' residence belonged to him; denied other involvement in the drug trade after 1994; denied that he made a contrary confession to Agent Johnson; and specifically denied implicating Baker in the drug trade. The ostensible drug ledgers, Hampton explained, were actually accounts of donations and gambling debts; the numerous phone calls between himself and Baker, Hampton asserted, were made because of their mutual interest in music.

## ANALYSIS

Hampton challenges his conviction on a number of grounds. First, he contends that all evidence discovered by virtue of the automobile search should have been suppressed. Second, he claims that his sixth amendment right to trial by a fair cross-section of the community was violated because blacks were under-represented in the jury venire. Third, he maintains that the trial court erred by refusing to submit an entrapment instruction to the jury. Finally, Hampton insists that his sentence was imposed in violation of the equal protection clause because he, as a trafficker of crack cocaine, was punished far more severely than a similarly-situated trafficker of powder cocaine.

5

Baker adopts Hampton's challenge to the venire. Additionally, Baker urges that his conviction must be reversed because of the erroneous admission of Agent Johnson's testimony regarding Hampton's out-of-court confession implicating Baker. In addition, Baker asserts that his trial counsel's failure to object to the admission of this testimony constitutes ineffective assistance of counsel.

## I.    Motion To Suppress.

The trial court upheld the search on three grounds: (1) the police officers had the probable cause necessary to satisfy the automobile exception to the warrant requirement; (2) the search was lawful as a search incident to arrest; and (3) the search was lawful as an inventory search.

The first ground provides an independent basis for affirmance, we therefore confine our discussion to the arguments relating to that issue.[3] Hampton does not dispute the trial court's holding that the initial stop and his subsequent arrest were legal. Rather, he challenges the trial court's conclusion that the police had probable cause to search his vehicle. Relying on **United States v. Beale**,[4] a case from the Ninth Circuit, Hampton insists that the existence of probable cause must be measured before, not after, a canine alerts to drugs. Applying this standard, Hampton contends that Officer Head lacked any reasonable, articulable suspicion to call in the canine unit.

---

[3]We need not resolve whether the search would have been lawful as a search incident to arrest or as an inventory search.

[4]731 F.2d 590 (9th Cir. 1983).

6

The Ninth Circuit has overruled the case upon which Hampton relies,[5] and, regardless, our controlling precedents foreclose this argument. We repeatedly have held that a dog sniff does not constitute a search within the meaning of the fourth amendment and that police officers need not have reasonable suspicion before calling in a canine unit.[6]  Of particular relevance herein, a "dog alert provide[s] probable cause to search."[7]  Therefore, even assuming that Officer Head lacked any basis to search Hampton's vehicle prior to calling in the canine unit, he had probable cause to search after the canine alerted.  Consequently, the trial court properly denied Hampton's motion to suppress.

## II.    Fair Cross-Section Requirement.

Hampton and Baker objected to the jury venire because only two of thirty-two individuals called were black.  They contend that exclusive reliance on the voter registration roles for jurors results in underrepresentation of blacks.  The trial court overruled their objection.

The sixth amendment requires that "petit juries . . . be drawn from a source fairly representative of the community."[8]  To establish a violation of this requirement, a defendant must show the following:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which

---

[5]**United States v. Beale**, 736 F.2d 1289 (9th Cir. 1984) (en banc).

[6]**See United States v. Seals**, 987 F.2d 1102 (5th Cir. 1993).

[7]**United States v. Williams**, 69 F.3d 27, 28 (5th Cir. 1995).

[8]**Taylor v. Louisiana**, 419 U.S. 522, 538 (1975).

7

juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.[9]

While defendants satisfied the first prong of the test, they offered no evidence relative to the latter prongs. On appeal they cite 1990 census figures. This information was not furnished to the trial court and we do not consider it on appeal.[10] Were it otherwise, the evidence would relate only to the second prong; it would have no bearing on the third which would remain unproven.

## III.  Entrapment.

We review de novo a trial court's refusal to offer a theory of defense requested by a defendant.[11] "A defendant is entitled to an entrapment instruction when there is sufficient evidence from which a reasonable jury could find entrapment."[12] When sufficient evidence supports an entrapment instruction but the trial court refuses to so charge the jury, the court commits reversible error.[13]

Entrapment is an affirmative defense which requires the defendant to make a prima facie showing with respect to two elements: (1) a lack of predisposition on the part of the defendant to engage in the criminal conduct and (2) "some governmental involvement and inducement more substantial than simply providing

---

[9]**Duren v. Missouri**, 439 U.S. 357, 364 (1979).

[10]**See, e.g., United States v. Bounds**, 943 F.2d 541 (5th Cir. 1991).

[11]**United States v. Bradfield**, 113 F.3d 515 (5th Cir. 1997).

[12]**Id.** at 520-21.

[13]**Id.**

8

an opportunity or facilities to commit the crime."[14] Predisposition, the principal element in the defense of entrapment, . . . focuses upon whether the defendant was an "unwary innocent" or, instead, an "unwary criminal" who readily availed himself of the opportunity to perpetrate the crime.[15] "The critical determination is whether the criminal intent or design originated with the defendant or with the government agents."[16] If the defendant presents evidence that provides a basis for reasonable doubt as to lack of predisposition and inducement, the trial court must give an entrapment instruction and the government must prove, beyond a reasonable doubt, that the defendant was not entrapped.

According to Hampton, his post-1994 involvement in drug trafficking consisted solely of delivering one drug shipment for Hopes on August 22, 1996. Hampton contends that Hopes, acting as an agent for the government, induced him to violate the law by repeatedly begging him to deal drugs to raise money for Hopes' legal defense. He was not predisposed to drug trafficking, Hampton urges, because, with the support of his family, he had renounced the drug business sometime in 1994 and had not dealt drugs until August 1996, and then only under pressure from Hopes's emotional entreaties.

The government counters that there is no evidence suggesting that when Hopes purportedly pleaded with Hampton to engage in a drug transaction he acted

---

[14]**Id.** at 521.

[15]**Mathews v. United States**, 485 U.S. 58, 63 (1988) (internal quotations and citations omitted); **United States v. Brace**, 145 F.3d 247 (5th Cir. 1998) (en banc).

[16]**United States v. Pruneda-Gonzalez**, 953 F.2d 190, 197 (5th Cir. 1992).

on behalf of the government. Even assuming that Hopes could be deemed an agent for the United States, the government argues, Hampton failed to establish lack of predisposition.

We reject the government's conclusory two-sentence argument that Hampton failed to introduce sufficient evidence that, in imploring Hampton to deal drugs, Hopes acted for the government. Hopes testified that he contacted Hampton in order to fulfill his promise to cooperate with the government and to serve as its confidant. Further, he stated that the government came up with the plan that he telephone Hampton, that he record the call, and that he attempt to persuade Hampton to deal crack cocaine. Despite hatching this plan, the government failed to delineate the permissible bounds of persuasion or to provide any guidance to Hopes regarding the lengths to which he could go to secure Hampton's agreement to deal drugs. Based on this, we hold that Hampton introduced sufficient evidence of government involvement.[17]

We also cannot accept the government's argument that Hampton failed to introduce sufficient evidence as to lack of predisposition. To be sure, the evidence is far from compelling on this score. But, viewing the evidence in the light most favorable to Hampton, a rational jury could conclude that, as a result of Hampton's confrontation with his family two years before the instant offense, Hampton had

---

[17]**See Sherman v. United States**, 356 U.S. 369, 373-74 (1958) ("The [g]overnment cannot disown [its informer] and insist that it is not responsible for his actions. Although he was not being paid, [he] was an active government informer. . . . Undoubtedly the impetus for [the informer's actions] was the fact that . . . [he] himself
was under criminal charges for illegally selling narcotics and had not yet been sentenced.").

renounced drug dealing and was committed to leading a law-abiding life. A reasonable juror could find that only after Hopes's persistent calls, entreaties for money, and pleas for sympathy, Hampton succumbed (despite initial refusals) and agreed to deal drugs.

Though the case is very close and Hampton's evidence undeniably weak, we believe Hampton's testimony was sufficient under the unique circumstances of this case to warrant an instruction on entrapment.

## IV.    Hampton's Confession Implicating Baker.

Though he did not object at the trial level, Baker now contends that the trial court committed reversible error by allowing Agent Johnson's testimony recounting Hampton's out-of-court inculpatory statements about Baker. The challenged testimony consists of the following colloquy between counsel for the government and Agent Johnson:

Q:    What did Mr. Hampton tell you about providing crack cocaine to Mr. Ronnie Hopes?
A:    He told me that he had been supplying Ronnie Hopes with . . . crack cocaine on a monthly basis since August of 1995 to the . . . present day of his arrest.
Q:    And what . . . was Mr. Hopes to do with this crack cocaine that he was receiving?
A:    He was to give the crack cocaine to an individual by the name of Randy Baker in Austin, Texas.

Because Baker did not challenge this testimony before the trial court, our review is "sharply circumscribed by the plain error standard requiring that

11

unobjected-to errors be 'plain' and 'affect substantial rights.'"[18] Even if these requirements are met, we may, in our discretion, "decline to correct errors which do not 'seriously affect the fairness, integrity, or public reputation of judicial proceedings.'"[19]

We begin this discussion by emphasizing what is not at issue here: there is no claim under **Bruton v. United States**.[20]  **Bruton** holds that a defendant's sixth amendment right to confrontation is violated when two defendants are tried jointly and out-of-court statements made by one defendant who does not take the stand are used against the other defendant.  Here, any potential **Bruton** problem was cured when Hampton took the stand and subjected himself to cross examination by Baker's attorney.[21]

Nor does Baker purport to rely on **Bruton**.  Instead, Baker urges that Hampton's confession implicating him was inadmissible hearsay -- it was an out-of-court statement made by Hampton offered for the truth of the matter asserted.[22] Introduction of this inadmissible hearsay, Baker contends, was extremely prejudicial to his case.  The general prejudice one would expect to flow from

---

[18]**United States v. Calverley**, 37 F.3d 160, 162 (5th Cir. 1994) (en banc) (quoting **United States v. Olano**, 507 U.S. 725, 732 (1993)).

[19]**Id.**

[20]391 U.S. 123 (1968).

[21]**See Nelson v. O'Neil**, 402 U.S. 622 (1971).

[22]**See** Fed. R. Evid. 801, 802.  Hampton's out-of-court statements regarding Baker would have been admissible **solely to impeach him** after he offered testimony inconsistent with these statements.  **See, e.g., United States v. Steen**, 55 F.3d 1022 (5th Cir. 1995).

12

admission of such testimony, Baker argues, was exacerbated by the government's emphasis on it during closing argument. Baker suggests that the government's invocation of the out-of-court statement was especially damaging because, apart therefrom, there was minimal evidence corroborating Hopes' testimony.

The government candidly acknowledges that Hampton's out-of-court statement about Baker was admitted in error, but disputes that its admission requires reversal. The government urges that its prejudicial impact was negated when Hampton took the stand and denied that he had inculpated Baker. In addition, the government maintains that the error was harmless in light of the other probative evidence of Baker's guilt, specifically, Hopes' testimony and the phone records and taped conversations.

This matter was not objected to in the trial court and we must review for plain error. The following factors are salient to this decision.

First, and foremost, Hopes' testimony, coupled with the phone records and taped conversations, supports Baker's conviction. Though we agree with Baker that the taped conversations are somewhat ambiguous, viewed in light of all of the evidence presented at trial they bolster Hopes' account. Similarly, the phone records Baker disparages as uninformative cannot be viewed in a vacuum; they are part of a bigger picture, and they confirm Hopes' account. Even without Agent Johnson's testimony, the evidence against Baker was sufficient to support his conviction.

Second, Hampton took the stand, subjected himself to cross examination, and

flatly denied making the incriminating statement about Baker. Meanwhile, Agent Johnson's reference to Hampton's confession as it implicated Baker was made briefly and without undue emphasis; it boiled down to one sentence that specifically mentioned Baker. Though the government focused on this testimony by Agent Johnson in its closing argument, Baker's counsel had in his arsenal Hampton's direct denial. It cannot be reasonably suggested that this wholly negated the impact of Agent Johnson's testimony. But, at the very least, Hampton's specific denial diminished the prejudice Baker otherwise would have suffered.

Under these circumstances, it cannot be said that the trial court's error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings."[23] Thus, even though Hampton's out-of-court statement should not have been admitted as substantive evidence against Baker, its admission does not provide a basis for overturning Baker's conviction.

## V.    Ineffective Assistance.

Baker claims that trial counsel's failure to object to Agent Johnson's testimony rises to ineffective assistance. "As a general rule, Sixth Amendment claims of ineffective assistance of counsel cannot be litigated on direct appeal, unless they were adequately raised in the district court."[24] "Only in 'rare cases where the record allow[s] us to evaluate fairly the merits of the claim' will we

---

[23]**United States v. Atkins**, 297 U.S. 157, 160 (1936).

[24]**United States v. Gibson**, 55 F.3d 173, 179 (5th Cir. 1995).

14

resolve ineffective assistance issues on direct appeal."[25]

This case does not fall into this narrow category and we cannot and do not address this issue today.

## VI. Sentencing Disparities Between Crack Cocaine And Powder Cocaine.

We have held that no deprivation of equal protection arises from the sentencing disparity for offenses involving crack cocaine, on the one hand, and offenses involving powder cocaine, on the other.[26] We are bound by this holding and thus reject Hampton's constitutional challenge to the sentencing guidelines.

For these reasons, the conviction and sentence of Eric Hampton is VACATED and the case is REMANDED to the trial court for further proceedings consistent with this opinion; the conviction and sentence of Randy Baker are AFFIRMED.

---

[25]**United States v. Palmer**, 122 F.3d 215, 221 (5th Cir. 1997).

[26]**See United States v. Wilson**, 77 F.3d 105 (5th Cir. 1996).