**Yovanny Ferrari ABREU, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Civil Action No. 93–821–AM.
Crim. Action No. 91–322–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Jan. 2, 1996.

Joseph N. Bowman, Alexandria, Virginia, for petitioner.

Helen F. Fahey, United States Attorney, Michael O'Hare, Special Assistant United States Attorney, Alexandria, Virginia, for U.S.

## MEMORANDUM OPINION

ELLIS, District Judge.

This matter comes before the Court on Yovanny Ferrari Abreu's petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and his motion to amend the petition to state another ground for re-

lief.[1] The case presents the novel question whether the recent decision in *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, —— L.Ed.2d —— (1995), which sharply limits what it means to "use" a gun in relation to a drug trafficking crime for purposes of 18 U.S.C. § 924(c)(1), applies retroactively.

## I

In May 1991, agents of the Northern Virginia Drug Enforcement Task Force initiated an investigation of a drug trafficking organization of which petitioner Abreu was a member. During this investigation, undercover agents made seven purchases of cocaine from members of the organization, including Abreu. On July 26, 1991, Abreu and several of his co-conspirators were arrested after they sold 786 grams of cocaine to an undercover agent. Following his arrest, Abreu gave his consent to a search of his Arlington residence. He told the agents they would find a firearm in a toolbox located next to his bed. When the agents conducted the search, they found a nine-millimeter semiautomatic pistol in the box just as Abreu had stated. They also found $420 in currency, the proceeds from a cocaine sale Abreu had made to an undercover agent.

A grand jury returned a twelve-count indictment charging Abreu and others with a variety of drug trafficking offenses. On October 23, 1991, Abreu pled guilty to Count 1 of the indictment, charging him with conspiring to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and to Count 12, charging him with using a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The plea agreement and related statement of facts did not specify the quantity of cocaine attributable to the conspiracy and reasonably foreseeable to Abreu. Similarly, the probation officer, in preparing the presentence investigation report ("PSIR"), did not undertake to ascertain this cocaine quantity. Instead, as the PSIR reflects, the probation officer determined that 3,094 grams of cocaine were directly attributable to Abreu. Noting, however, that Abreu had pled guilty to conspiracy to distribute five kilograms or more, the officer then used the five kilogram amount to calculate Abreu's base offense level of 32. *See* U.S.S.G. § 2D1.1(c). A two-level increase was applied to account for Abreu's role in the offense, *see* U.S.S.G. § 3B1.1, and a two-level reduction was awarded for his acceptance of responsibility, *see* U.S.S.G. § 3E1.1, yielding an adjusted total offense level of 32. Because Abreu's criminal history fell within category I, he was subject to a sentencing range of 121 to 151 months for the drug conspiracy offense.

At sentencing, neither Abreu nor the government objected to the PSIR and the Court adopted its findings and conclusions. Accordingly, consistent with the PSIR, the Court sentenced Abreu to consecutive terms of imprisonment, 121 months for the drug conspiracy charge to be followed by 60 months for the firearm conviction. The Court also imposed five years of supervised release and a $100 special assessment. Abreu did not appeal his sentence and the government did not file a motion for a reduction of sentence for substantial assistance pursuant to Rule 35(b), Fed.R.Crim.P. in the year following the imposition of sentence. Abreu then collaterally attacked his sentence pursuant to 28 U.S.C. § 2255, alleging that he was responsible for no more than 1154.2 grams of cocaine.[2] Because this Court had made no finding as to the quantity of drugs reasonably foreseeable to Abreu, as required by the Sentencing Guidelines,[3] the Court ordered an evidentiary hearing for the purpose of making such a finding. *See Abreu v. United States*, Civ. No. 93–821–AM, Memorandum Opinion (E.D.Va. October 24, 1995).

---

1. The Court previously consolidated Abreu's petition with the § 2255 petition of his co-conspirator, Jose Ramon Quesada. Quesada's motion has previously been disposed of, and only Abreu's petition is at issue in this memorandum opinion.

2. Abreu also relied on several other grounds for relief, all of which were meritless. *See Abreu v. United States*, Civ. No. 93–821–AM, Memorandum Opinion at 17–21 (E.D.Va. October 24, 1995).

3. *See* U.S.S.G. § 1B1.3; *United States v. Vinson*, 886 F.2d 740, 742 (4th Cir.1989).

That hearing was held on December 7, 1995, at which time the Court heard testimony from Agent Roger Kelly, an undercover agent who was involved in the investigation of Abreu and his co-conspirators. The resentencing was continued until December 15, 1995 to allow Abreu's counsel to perform additional investigation and to introduce further evidence at the December 15 hearing if necessary. Abreu chose not to offer more evidence on December 15, and the Court proceeded to make a finding that 3188.4 grams of cocaine were attributable to the conspiracy and reasonably foreseeable to Abreu. This amount of cocaine yields an offense level of 28. *See* U.S.S.G. § 2D1.1(c). That level is then increased by two for Abreu's role in the offense, *see* U.S.S.G. § 3B1.1, and decreased by two for Abreu's acceptance of responsibility, *see* U.S.S.G. § 3E1.1, yielding a total adjusted offense level of 28. That level, coupled with a Category I criminal history, produces a sentencing range of 78–97 months for the drug trafficking conviction.

At the hearing, Abreu raised a question as to the sufficiency of the evidence supporting his original sentence on the firearm charge in light of the Supreme Court's recent decision in *Bailey v. United States,* — U.S. —, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).[4] Abreu was directed to file an amended § 2255 petition, and the government was given an opportunity to respond. The parties have complied and the matter is now ripe for disposition.

## II

Section 924(c)(1) of Title 18 of the United States Code provides that "Whoever, during and in relation to any … drug trafficking crime … uses or carries a firearm, shall, in addition to the punishment provided for such … drug trafficking crime, be sentenced to imprisonment for five years . . . ." 18 U.S.C. § 924(c)(1). Until recently, this circuit interpreted the word "uses" to allow convictions where the defendant was in mere construc-

tive possession of the firearm and where that possession could be said to have somehow facilitated a drug transaction. *See, e.g., United States v. Paz,* 927 F.2d 176, 179 (4th Cir.1991) (evidence sufficient where gun was found under mattress in defendant's bedroom); *United States v. Brockington,* 849 F.2d 872, 876 (4th Cir.1988) ("[I]t is enough if the firearm is present for protection and to facilitate the likelihood of success, whether or not it is actually used.").

In *Bailey v. United States,* — U.S. —, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), the Supreme Court rejected this view and significantly narrowed the scope of "use" by holding that § 924(c)(1) "requires evidence sufficient to show an *active employment* of the firearm by the defendant, a use that makes the firearm an *operative factor* in relation to the predicate offense." *Id.* at —, 116 S.Ct. at 506 (emphasis added). Abreu argues that under this definition of "use" his conviction cannot be supported. *Bailey* involved evidence that a firearm was found locked in the defendant's footlocker in a bedroom closet was insufficient to support a conviction under § 924(c)(1). These facts are indistinguishable from Abreu's case, in which Abreu's gun was discovered in a toolbox next to his bed. Accordingly, Abreu cannot be said to have "used" a firearm in relation to a drug trafficking crime under the *Bailey* interpretation of the statute.

■ This conclusion does not by itself afford Abreu relief; he must overcome three substantial hurdles before he can win any relief from his 60 month § 924(c)(1) sentence. First, he must establish that *Bailey* applies retroactively, an issue on which there is as yet no reported decision. Second, he must show adequate cause for his failure to raise this claim at his sentencing hearing. Third, he must be prejudiced by the error. As the government forthrightly recognizes, Abreu has cleared all three hurdles.

■ First, well-settled principles require *Bailey*'s retroactive application. The Supreme Court has held that new constitutional

---

4. In his original *pro se* § 2255 petition, filed before *Bailey,* Abreu contended that the evidence supporting the firearms charge was insufficient. That contention was dismissed as meritless. *See*

*Abreu v. United States,* Civ. No. 93–821–AM, Memorandum Opinion at 18 (E.D.Va. October 24, 1995).

rules of criminal procedure do not apply to cases on collateral review. *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). The reasoning of *Teague* would appear to apply to non-constitutional rules as well.[5] *Teague* does not, however, extend to substantive changes in the criminal law. *United States v. Tayman,* 885 F.Supp. 832, 839–40 (E.D.Va.1995). In the context of substantive changes, the Supreme Court "recognized full retroactivity as a necessary adjunct to a ruling that a trial court lacked authority to convict or punish a criminal defendant in the first place." *United States v. Johnson,* 457 U.S. 537, 550, 102 S.Ct. 2579, 2587, 73 L.Ed.2d 202 (1982) (referring to *Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974)). Indeed, in *United States v. Bonnette,* 781 F.2d 357 (4th Cir.1986), the Fourth Circuit, relying on *Davis,* held that "when a court reinterprets a criminal statute so as to narrow it, thus essentially repealing the statute as to some defendants," the decision applies retroactively and may be used to attack the conviction collaterally by means of a § 2255 motion. *Id.* at 362.[6] *Bailey,* in narrowing the relevant statute and making it inapplicable to Abreu, has made a substantive rather than a procedural change. *See Bonnette,* 781 F.2d at 362. Accordingly, *Bailey* must apply retroactively.

█ Abreu also leaps over the second barrier to relief, as he has shown good cause for his failure to make this argument at the sentencing hearing. His plea of guilty to the firearms charge would ordinarily constitute a procedural default barring collateral review of any claimed deficiency in the factual basis for the plea. Under these circumstances, collateral relief is available only if a petitioner can show "cause" excusing his procedural default. *See United States v. Maybeck,* 23 F.3d 888, 891 (4th Cir.1994). In this case, adequate "cause" plainly exists to excuse the apparent procedural default, as the judicial decision on which Abreu relies was decided nearly four years after he was sentenced. A petitioner seeking collateral relief may be excused from failing to make an objection in the original proceeding if the basis for the objection was not known until after the petitioner's conviction became final. *See Reed v. Ross,* 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984). Thus, Abreu has shown good cause for not raising the issue earlier.

█ Finally, Abreu also overcomes the third barrier to relief, as he demonstrates the requisite prejudice that would result from the failure to apply *Bailey.* An error of law in sentencing does not provide a basis for collateral attack "unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 184, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979). In this case, prejudice to Abreu lies in his decision to plead guilty. A defendant who enters a plea of guilty simultaneously waives several constitutional rights. To meet the standards of due process, therefore, his plea must be "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). "Moreover, because a guilty plea is

**5.** Several courts have explicitly rejected the distinction between constitutional and non-constitutional claims. *See, e.g., United States v. Valladares–Tesis,* 762 F.Supp. 465, 467 (D.P.R.1991); *United States v. Hrubec,* 734 F.Supp. 60, 65 (E.D.N.Y.1990); *United States v. Baron,* 721 F.Supp. 259, 261 (D.Haw.1989), *rev'd on other grounds sub nom., United States v. Judge* 944 F.2d 523 (9th Cir.1991), *cert. denied,* 504 U.S. 927, 112 S.Ct. 1988, 118 L.Ed.2d 585 (1992). Other courts have simply applied *Teague*'s analysis to non-constitutional claims without discussion. *See, e.g., Andiarena v. United States,* 967 F.2d 715, 717 (1st Cir.1992); *Harris v. Vasquez,* 949 F.2d 1497, 1512 (9th Cir.1991); *Gilberti v. United States,* 917 F.2d 92, 94–95 (2d Cir.1990); *Elortegui v. United States,* 743 F.Supp. 828, 831 (S.D.Fla.1990), *aff'd without opinion,* 943 F.2d 1317 (11th Cir.1991), *cert. denied,* 502 U.S. 1116, 112 S.Ct. 1229, 117 L.Ed.2d 464 (1992).

**6.** For cases recognizing that the *Davis* line of authority survives *Teague,* see *Chambers v. United States,* 22 F.3d 939, 942 (9th Cir.1994), *opinion vacated on other grounds,* 47 F.3d 1015 (9th Cir.1995); *Ianniello v. United States,* 10 F.3d 59, 63 (2d Cir.1993); *United States v. Woods,* 986 F.2d 669, 676–77 (3d Cir.), *cert. denied,* ——— U.S. ———, 114 S.Ct. 90, 126 L.Ed.2d 58 (1993); *United States v. Sood,* 969 F.2d 774, 776 (9th Cir. 1992); *United States v. McClelland,* 941 F.2d 999, 1001 (9th Cir.1991); *Callanan v. United States,* 881 F.2d 229, 231–32 & n. 1 (6th Cir. 1989).

208

an admission of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1960). "A guilty plea that is not both voluntary and knowing is in violation of due process and is thus void." *Id.; see also Smith v. O'Grady,* 312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed. 859 (1941) (notice of true nature of charge required for plea). Here, it appears Abreu did not have an understanding of the law in relation to the facts. Indeed, it would appear that he and his counsel mistakenly understood the law to be that a firearm found in the vicinity of drugs or drug proceeds would support a conviction under § 924(c)(1). His resulting involuntary plea therefore constitutes a "fundamental defect" in his conviction which "inherently results in a complete miscarriage of justice." *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962).

Given that Abreu is entitled to relief, the question remains what form that relief should take. In another case, it might well be appropriate at this point to order an evidentiary hearing to determine whether the petitioner either "actively employed" or "carried" the gun in connection with the cocaine conspiracy such that a conviction under § 924(c)(1) would be appropriate in spite of the erroneous interpretation of "uses." Such a hearing is not necessary here, however, for the government has conceded that the evidence in this case could not support a conviction under § 924(c)(1) as construed by *Bailey.* Accordingly, Abreu's petition for relief will be granted and his 60 month sentence will be vacated.

An appropriate order will enter.