**UNITED STATES of America**

v.

**Robert MORRIS.**

**Civil No. 4:96–CV–166(L)(N).**
**Criminal No. 4:92–CR–113(L)(N).**

United States District Court,
S.D. Mississippi,
Jackson Division.

April 15, 1996.

William S. Moore, Jackson, MS, for Robert Morris.

Victoria May, U.S. Attorney's Office, Jackson, MS, for the U.S.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on defendant Robert Morris' petition to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. By his petition, defendant contends that his conviction and sentence under 18 U.S.C. § 924(c)(1) for "using" a firearm must be vacated in light of the Supreme Court's decision in *Bailey v. United States,* — U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). The government opposes defendant's motion, and the court, having considered the motion and response thereto, along with the record in this cause, concludes that defendant's conviction for "using" a firearm must be vacated and defendant is entitled to a new trial on the charge that he "carried" a firearm in relation to a drug trafficking offense.

In October 1992, defendant was charged in a two-count indictment with possession with intent to distribute marijuana (Count 1) and with using and carrying a firearm in relation to a drug trafficking crime, namely, the marijuana charge (Count 2), in violation of 18 U.S.C. § 924(c)(1). Defendant pled guilty to the drug charge, and following a two-day jury trial in May 1993, was found guilty on the firearm charge. The Fifth Circuit affirmed his conviction of the firearm offense.

On May 21, 1993, defendant was sentenced on Count 1 to twelve months' imprisonment, and on Count 2, he received a sixty-month sentence, with these sentences to run consecutively. In addition, he received concurrent terms of three years' supervised release on Counts 1 and 2, was ordered to pay a $3000 fine, and received a $50 special assessment on each count. Defendant has now completed serving his one-year sentence on the charge of marijuana possession and is currently serving the remainder of his sentence on Count 2.

■■■ Section 924(c)(1) provides that "[w]hoever, during and in relation to any ... drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such ... drug trafficking crime, be sentenced to imprisonment for five years...." Prior to the Supreme Court's December 1995 decision in *Bailey,* upon which defendant's motion is premised, the law in the Fifth Circuit was that a conviction for "using" a firearm under § 924(c)(1) did not depend on proof that the defendant had actual possession of the weapon or used it in any affirmative manner, but rather, to secure a conviction, the government was required to prove only that the firearm was available to provide protection to the defendant in connection with his engagement in drug trafficking. *See United States v. Willis,* 6 F.3d 257, 264 (5th Cir.1993). In *Bailey,* however, the Supreme Court sharply limited the scope of the term "use," holding that to prove "use," the government must adduce "evidence sufficient to show an *active employment* of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." *Bailey,* at ——— ———, 116 S.Ct. at 505–06. "Use" of a firearm, in the Supreme Court's view, would include such activities as "brandishing, displaying, bartering, striking with ... firing or attempting to fire, a firearm," "reference to a firearm calculated to bring about a change in the circumstances of the predicate offense,"

or merely the "forceful presence of a gun on the table." *Id.* at ——, 116 S.Ct. at 508. But, the Court added, the "inert presence of a firearm, without more, is not enough to trigger § 924(c)(1).... A defendant cannot be charged under § 924(c)(1) merely for storing a weapon near drugs or drug proceeds." *Id.* Nor, the Court said, would "use" extend to encompass a defendant's concealment of a gun nearby "to be at the ready for imminent confrontation." *Id.*

■ At the conclusion of the evidence presented at the trial in this case, the court instructed the jury, in accordance with the Fifth Circuit Pattern Jury Instruction, that to prove "use" of the firearm,

[t]he government [was] not required to prove that the defendant actually fired the weapon or brandished it at someone.... Nor, [was] the government required to prove that the defendant had actual possession or used the firearm in any affirmative manner. However, you must be convinced beyond a reasonable doubt that the firearm played a role in or facilitated the commission of a drug offense. This requirement may be satisfied by evidence which convinces you beyond a reasonable doubt that the firearm was available to provide protection to the defendant in connection with the engagement in drug trafficking. In other words, you must find that the firearm was an integral part of the drug offense charged.

Manifestly, this instruction was erroneous, or at least partially so, in light of the definition of "use" espoused in *Bailey.* Moreover, it is apparent (and the government implicitly, though not explicitly, concedes) that the evidence adduced at the trial of this case does not support defendant's conviction for "use" of a firearm during and in relation to a drug trafficking crime under *Bailey* since there was no proof whatsoever that the defendant fired, brandished or displayed the gun, or even made reference to any gun. Rather, the gun at issue, a Colt .25 caliber semi-automatic pistol, was concealed on a table in

the room in which defendant was seated on a couch with a large bag of marijuana at his fingertips.[1] *See United States v. Wilson,* 77 F.3d 105 (5th Cir.1996). Thus, a conclusion that defendant "used" a firearm in relation to a drug trafficking offense is unsupportable. The government, though, maintains in opposition to defendant's motion that relief is nevertheless unavailable to the defendant because, (1) by having failed to appeal the court's jury instruction on the § 924(c)(1) offense, defendant is procedurally barred from now attacking his conviction; (2) *Bailey* does not apply retroactively to defendant's conviction in any event; and (3) even if *Bailey* does apply retroactively, the defendant's conviction for "carrying" a firearm remains valid irrespective of *Bailey.* For the reasons that follow, the court rejects the government's arguments.

■ Contrary to the position asserted by the government, the defendant did challenge, at least indirectly, this court's instruction to the jury which permitted a conviction for "use" under § 924(c)(1) without proof that a firearm was actively employed in some manner by the defendant. Accordingly, the government's argument that defendant is now procedurally barred from raising this issue is not well-founded. In any event, courts have uniformly agreed that a defendant's failure to raise an issue which could not have been known at the time constitutes cause for the defendant's failure to raise the issue earlier. *See, e.g., Abreu v. United States,* 911 F.Supp. 203, 206 (E.D.Va.1996) ("A petitioner seeking collateral relief may be excused from failing to make an objection in the original proceeding if the basis for the objection was not known until after the petitioner's conviction became final."); *cf. United States v. Fletcher,* 919 F.Supp. 384 (D.Kan.1996) ("[T]hose courts which have addressed *Bailey* in the context of a prisoner's § 2255 motion applied the *Bailey* analysis to the petitioner's conviction, notwithstanding the fact that the petitioner had pled guilty to a violation of 18 U.S.C. § 924(c)(1)."). Further, and as is discussed in more detail *infra,* it is apparent

---

**1.** As discussed *infra,* precisely *where* the gun was in relation to the defendant—i.e., whether or not it was within his reach—was the subject of conflicting testimony at trial. However, the court's

conclusion that defendant did not "use" the firearm within the contemplation of § 924(c)(1), as narrowed by *Bailey,* is unaffected by this conflict.

that defendant has been prejudiced to the extent that he may well have been convicted of a crime based on conduct that is not criminal. Accordingly, defendant's claim is not procedurally barred.

The government's position on the question of whether *Bailey* applies retroactively is not clear from the memorandum submitted in response to defendant's petition. On the one hand, the government, citing *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), argues that *"Bailey* does not announce a 'new rule' . . . which would cause it *not to apply retroactively,* to convictions that were final, as was this one, when the Court issued its decision" in *Bailey.* Yet at the same time, it submits that *"Bailey* decriminalizes an act for which the defendant might have been convicted," and asserts that "the Supreme Court . . . made it clear [in *Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974) ] that a defendant may properly made [sic] a 2255 claim when a court decision changes the law subsequent to his conviction and results in his 'conviction and punishment [having been] for an act that the law does not [now] make criminal.' " Regardless of which position the government intends, this court concludes, as has every court that has addressed this issue, that *Bailey* applies retroactively.

 While the Supreme Court in *Teague* held that new constitutional rules of criminal procedure do not apply retroactively, that is not what is at issue here. Accordingly, this case is not governed by *Teague,* but rather by *Davis v. United States,* 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), in which the Court held that collateral relief is available under § 2255 where "an intervening judicial decision establishes that the defendant suffered conviction and punishment . . . for an act that the law does not make criminal." *Id.* at 346, 94 S.Ct. at 2305. The Court reasoned that to allow the conviction and punishment to stand under such circumstances would " '[result] in a complete miscarriage of justice' and 'present exceptional circumstances' that justify collateral relief under § 2255." *Id.* at 346–47, 94 S.Ct. at 2305 (quoting *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417

(1962)). *Bailey* obviously marks a significant change in the substantive law governing the interpretation and application of § 924(c)(1), in that it decriminalizes conduct which was once thought to have provided the basis for a conviction and sentence under the statute. Under *Davis,* then, there is no question but that *Bailey* applies retroactively. *See Bell v. United States,* 917 F.Supp. 681 (E.D.Mo. 1996); *Abreu v. United States,* 911 F.Supp. 203 (E.D.Va.1996); *Fletcher,* 919 F.Supp. at 388; *United States v. Canady,* 920 F.Supp. 402, 405 n. 1 (W.D.N.Y.1996); *Sanabria v. United States,* 916 F.Supp. 106 (D.P.R.1996).

 Pointing out that the indictment in this case charged defendant with "using and carrying" a firearm, and that the jury was instructed that defendant could be convicted of using *or* carrying a firearm in relation to a drug trafficking offense, the government argues that even though the evidence does not support defendant's conviction for "using" a firearm under *Bailey,* it surely supports a "carrying" conviction. Where an indictment "for a violation of § 924(c)(1) charges in the conjunctive, the government may succeed by proving that the defendant either used or carried a firearm; it need not prove both." *United States v. Flores,* No. 89–220, 1996 WL 32505 (E.D.La. Jan. 26, 1996) (citing *United States v. Pigrum,* 922 F.2d 249, 253 (5th Cir.), *cert. denied,* 500 U.S. 936, 111 S.Ct. 2064, 114 L.Ed.2d 468 (1991)); *see also Bailey,* at ——, 116 S.Ct. at 509 (remanding for determination of whether defendant was properly convicted of "carrying" firearm). Thus, even though it must be concluded that defendant did not "use" the firearm at issue, "his conviction should be upheld if the facts demonstrate that he 'carried' a firearm as contemplated by § 924(c)(1)." *See United States v. Flores,* No. 89–220, 1996 WL 32505 (E.D.La. Jan. 26, 1996) (though defendant presenting § 2255 petition may not have "used" firearm within meaning defined in *Bailey,* conviction upheld because proof established that he "carried" the firearm).

 In the wake of *Bailey,* the term "carrying" in § 924(c)(1) has taken on a new significance for, as the Supreme Court recognized in *Bailey,* the exceptionally broad definition previously accorded "use" effectively

rendered the statutory term "carrying" superfluous. *Bailey*, at ——, 116 S.Ct. at 509. *See United States v. Manning*, 79 F.3d 212, 216 (1st Cir.1996) ("By narrowing the interpretation of 'use' to instances of active employment, the *Bailey* Court recognized that the 'carry' prong would take on a new significance."); *United States v. Moore*, 76 F.3d 111 (6th Cir.1996) ("Our pre-*Bailey* definition of 'use' was so broad that neither party had a reason to focus on the factual issues relevant to the 'carry' prong."). The Court observed that if "use" were understood to cover "the action of a defendant who puts a gun into place to protect drugs or to embolden himself," the term would be "of such breadth that no role [would] remain[ ] for 'carry'." at ——, 116 S.Ct. at 507. While the Court did not undertake to define "carrying," focusing instead on the term "using," the Court did make it clear that the two terms are distinct, stating, "[A] firearm can be used without being carried . . . and a firearm can be carried without being used, e.g., when an offender keeps a gun hidden in his clothing throughout a drug transaction." *Id.* Thus, "the 'carry' prong of § 924(c)(1) . . . brings some offenders who would not satisfy the 'use' prong within the reach of the statute." *Id.* at ——, 116 S.Ct. at 509. An issue arises, then, as to the meaning of "carrying" a firearm.

█ In the case at bar, the government maintains that the *Bailey* Court implied that the term "carry," as it is used in § 924(c)(1), is to be equated with "possession," and it reasons, therefore, that because the defendant herein clearly "possessed" the .25 caliber weapon that was the subject of Count 2 of the indictment and which was found in the residence,[2] then it must be concluded that he "carried" that firearm. This position is unsupportable as a matter of law.

The courts that have considered the meaning of "carrying" in light of, or following *Bailey*, agree that "to be convicted of 'carrying' a weapon, a defendant must do more than possess or store a weapon." *United*

States v. Riascos–Suarez*, 73 F.3d 616 (6th Cir.1996); *see also United States v. Smith*, 80 F.3d 215 (7th Cir.1996). But there is no consensus as to just what "more" is required, nor do the courts necessarily agree on *Bailey*'s impact, or whether it has an impact, on defining the term "carry."

One court has held that "for a defendant to be convicted of 'carrying' a gun in violation of section 924(c)(1), the defendant must have transported the firearm on or about his person." *United States v. Hernandez*, 80 F.3d 1253, 1258 (9th Cir.1996). Some have suggested that the defendant's proximity to the weapon will suffice. In *Riascos–Suarez*, the Sixth Circuit found that,

> in order for a defendant to be convicted of carrying a gun in violation of section 924(c)(1), the firearm must be immediately available for use—on the defendant or within his or her reach. Such availability takes the weapon beyond simple possession or storage.

*Id.* at 623. *See also Sanabria v. United States*, 916 F.Supp. 106, 114 (D.P.R.1996) ("[W]e fully expect the pre-*Bailey* 'availability and proximity' analysis to live a second life under the 'carry' prong of . . . section 924(c)(1)"). Other courts, though, have held that availability alone is not a sufficient basis for a "carrying" conviction and that something further is required, namely, physical transportation of the firearm. For example, a panel of the Sixth Circuit in *United States v. Moore*, 76 F.3d 111 (6th Cir.1996), opined that "the immediate availability of the gun," while necessary to a conviction for "carrying," is not the only relevant consideration. *Id.* at 113. The court reasoned that "if Congress had meant section 924(c)(1) to implicate any individual who happens to be within arm's reach of a firearm, surely it would have selected a more accurate term than 'carry.' A definition of 'carry' that takes only availability into account ignores the term's most obvious connotation, i.e., physical transporta-

---

2. In fact, the government even argues that Morris "possessed," and hence "carried" not only the .25 caliber but also other weapons found in a locked closet in another room of the residence.

Patently, defendant cannot be said to have carried guns that were not even in the same room with the defendant and which were locked away in a closet.

tion." *Id.*[3] Similarly, in *United States v. Baker,* 78 F.3d 1241 (7th Cir.1996), the court, after observing that "carry" was not limited to situations in which the defendant has a gun on his person, concluded that "it is the possession of the firearm coupled with the affirmative act of transporting it during and in relation to a drug trafficking crime that precipitates liability under § 924(c)(1)." *Id.* at 1247. In that case, the element of transporting was satisfied by the fact that the gun was found under the driver's seat of a car. *See also United States v. Smith,* 80 F.3d 215 (7th Cir.1996) (defendants' "carrying" conviction sustainable where defendants were transporting the firearms in vehicle and had access to them); *United States v. Giraldo,* 80 F.3d 667 (2d Cir.1996) (defendant properly convicted of "carrying," though not "use," where gun was brought to meeting site in car of which he was custodian, and was within his easy reach); *United States v. Farris,* 77 F.3d 391 (11th Cir.1996) (where evidence showed that defendant used automobile as drug distribution center and evidence supported finding that defendant knew firearm was in glove compartment, jury could find that firearm was being carried by defendant in vehicle even though he did not "use" the firearm).

Another court addressing the "carrying" issue post-*Bailey* has concluded that *"Bailey* did not affect earlier case law construing the word 'carry' in § 924(c)(1)." In *United States v. Canady,* 920 F.Supp. 402 (W.D.N.Y. 1996), the guns that were the subject of the defendant's firearms conviction under § 924(c)(1) were found under a cushion on a loveseat where he was sitting, and the drugs were found under the loveseat's other cushion. Though this was not sufficient to support a conviction for "using" the firearms, the court considered whether it would support a conviction for "carrying." On this issue, the court reasoned:

> [S]ince the courts prior to *Bailey* had "generally agreed that 'carrying' [wa]s to

be interpreted narrowly, while 'use' [wa]s interpreted more broadly," *United States v. Pineda–Ortuno,* 952 F.2d 98, 103 (5th Cir.), *cert. denied,* 504 U.S. 928 [112 S.Ct. 1990, 118 L.Ed.2d 587] (1992), it would seem that the Supreme Court would not be as inclined to narrow the generally-accepted interpretation of "carrying" as it was to narrow the definition of "using."

*Id.* at 406. The court concluded that the defendant there did carry the firearms in connection with his drug offense:

> Although the guns were not found on defendant's person, their proximity to him is sufficient to constitute 'carrying' as that term has been construed by the courts. In addition, the evidence showed that defendant had literally carried the firearms before they were found.
>
> [D]efendant's fingerprint was found on one of the guns. The conclusion is inescapable, then, that at some point defendant had actually physically held the gun, which by anyone's definition would constitute "carrying."

*Id.* at 406–07.

In the Fifth Circuit, prior to *Bailey,* the proof required to support a conviction for "carrying" under § 924(c)(1) depended on whether the offense was charged in a vehicle or a non-vehicle context. The rule was that,

> in a non-vehicle context ... 'carrying' requires a showing that the gun was in reach during the commission of the offense. *United States v. Blankenship,* 923 F.2d 1110, 1116 (5th Cir.), *cert. denied,* [500] U.S. [954], 111 S.Ct. 2262, 114 L.Ed.2d 714 (1991). *Accord United States v. Joseph,* 892 F.2d 118, 126 (D.C.Cir.1989) (carrying requires a present ability to exercise dominion and control over a firearm and that the firearm be within easy reach); *United States v. Feliz–Cordero,* 859 F.2d 250, 253 (2nd Cir.1988) (a person cannot be said to carry without at least a showing that the

3. Though the Sixth Circuit panel that decided *Riascos–Suarez* made no mention of any requirement of transportation, stating only that the defendant "carried the weapon ... because the firearm was within reach and immediately available for use," the panel deciding *Moore* concluded that "[t]he appellant in *Riascos–Suarez* 'carried' the firearm not only because he had it within reach, but also because he physically brought it with him in the course of his drug trade." *Moore,* 76 F.3d at 113.

gun was within reach during the commission of a drug offense). *United States v. Pineda–Ortuno,* 952 F.2d 98 (5th Cir.1992). But,

> [w]hen a vehicle is used, "carrying" takes on a different meaning from carrying on the person because the means of carrying is the vehicle itself. *United States v. Cardenas,* 864 F.2d 1528, 1535–36 (10th Cir.), *cert. denied,* 491 U.S. 909, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989).

It appears, then, that under pre-*Bailey* Fifth Circuit precedent, "carrying," in a non-vehicle context, could be established by proof that the firearm was within the defendant's easy reach. This court perceives in the *Bailey* opinion nothing that would serve to alter this circuit's earlier definition of "carrying." Accordingly, the court concludes that the proof required post-*Bailey* to establish "carrying" a firearm in relation to a drug trafficking offense is no different than that required before *Bailey.*[4] *Cf. United States v. Flores,* No. 89–220, 1996 WL 32505, at *2 (E.D.La. Jan. 26, 1996) (although defendant did not "use" firearm as defined by *Bailey,* where admitted facts established that firearm was in motor vehicle operated by defendant and that defendant knowingly possessed firearm in relation to drug trafficking offense, defendant's conviction was nevertheless valid under "carry" prong of § 924(c)(1) under authority of *Pineda–Ortuno*).

The court has alluded earlier to the conflicting testimony presented in the case at bar concerning whether the .25 caliber at issue was within the defendant's reach. Government witnesses testified that the gun was located under a newspaper on a table next to the couch on which the defendant was sitting, and that he could have reached the weapon. However, both the defendant and a defense witness who was present at the time of the arrest denied that the gun was on a table by or near the defendant, and maintained instead that the gun was in a briefcase on a table some eighteen feet across the room from where defendant was seated and that it was by no means within his reach. In his closing argument to the jury, the prosecutor described this conflict in the testimony as irrelevant, explaining:

> In deciding the issues of whether he (Morris) used this gun to facilitate the offense, it doesn't really matter if it was right there next to him or if it was 18 feet away from him across the room. As you have been instructed, if it is available, that's enough. That's enough.

> Under this jury instruction, if it is available, he knows it's there, he admits that, so it really isn't a legal issue whether the gun is sitting right there by him or if it's across the room.

> . . . . .

> Mr. Morris says it's across the room because he feels like it's over there, it's not so available to him. It's a question of lesser availability maybe. But you see, that's not really an issue. This is a case where you're going to have to focus on the instructions that the court has given you and make sure that you understand what the issues are.

> ... What did he do in connection with this gun? He did exactly what this instruction says. He had the gun available to protect his drug transaction....

This argument was correct and proper at the time of defendant's trial in light of the jury charge given by the court and in light of then-existing precedent on the meaning of "use," and the court does not suggest otherwise. However, given the patent conflict in

---

4. In a Fifth Circuit case decided post-*Bailey,* the court said of *Bailey* that "[t]he Supreme Court specifically considered and rejected arguments by the government that § 924(c) criminalized the storing of a weapon near drugs or drug proceeds and concealing a weapon nearby for imminent confrontation during a drug transaction." *United States v. Wilson,* 77 F.3d 105, 110 (5th Cir. 1996). In that case, however, there was no proof that the defendant had either used, within *Bailey*'s definition, or carried any weapon:

> Wilson was not present at the location where the guns were seized, and his fingerprints were not recovered from any of the weapons. No witness testified to seeing Wilson use or carry any of the specific weapons named in Count 2. No drugs were recovered from the location where the weapons were seized....

*Id.* at 110. There was therefore no occasion in *Wilson* for the court to specifically consider what is meant by "carrying."

the trial testimony as to the location of the subject firearm, it is apparent that had the jury been presented with the correct law pertaining to "use" under *Bailey* so that their focus would have been turned to the "carrying" aspect of the charge, they could have acquitted Morris of carrying a firearm in relation to a drug trafficking offense *if* they accepted defendant's version of the fact. As it was, however, they were not called on to resolve the conflict in the evidence and instead were permitted to convict the defendant if they believed that the gun was in the residence—regardless of *where* it was located within the residence—in relation to his drug trafficking offense.[5] That is, "[t]he evidence and jury instructions," as highlighted by the prosecutor's argument, "allowed the jury to convict even if it believed that there was no gun within [Morris'] reach," and "[i]n fact, the jury instructions drew no distinction between 'use' and 'carry' at all." *Moore,* 76 F.3d at 113; *see also United States v. Spring,* 80 F.3d 1450 (10th Cir.1996) (finding plain error and remanding for new trial on "carrying" issue where portion of jury instruction on "use" was incorrect, instruction did not focus the jury's attention on elements of "carry" prong and evidence was not overwhelming that defendant aided and abetted "carrying" of firearm). Accordingly, the court concludes that the defendant's conviction must be vacated. However, since depending on which version of the facts the jury believed, it could have convicted him of "carrying," it follows that a new trial is in order on Count 2 of the indictment against the defendant.

Based on the foregoing, it is ordered that defendant's motion to vacate his conviction and sentence under Count 2 of the indictment is granted, and it is ordered that defendant will receive a new trial on the charge in Count 2, such trial to be scheduled without delay.

---

5. Notably, the defendant did not deny that he owned the gun and had brought the gun into the residence. In fact, he admitted as much. Thus, even if the Fifth Circuit's pre-*Bailey* cases on "carrying" under § 924(c)(1) in the "non-vehicle context" were construed as imposing a transportation element in addition to an accessibility element, that likely would be satisfied under the facts presented.