Koch v. USA                              CV-96-004-JD   05/10/96
              UNITED STATES DISTRICT COURT FOR THE
                    DISTRICT OF NEW HAMPSHIRE

Curtis Koch

        v.                              Civil No. 96-004-JD

United States of America


                            O R D E R


        This petition is brought pursuant to 28 U.S.C. § 2255.  On

September 16, 1991, in Cr.91-12-01-JD, the petitioner pled guilty

to the following charges:

        Count I - conspiracy to possess marijuana with intent
        to distribute;

        Count II - using and intending to use United States
        currency in the amount of $115,000 to commit or
        facilitate the commission of the conspiracy referred to
        in count I; and

        Count III - using and carrying a firearm during and in
        relation to the drug trafficking crime described in
        count I.

        On May 18, 1992, the petitioner was sentenced to a term of

twenty-one months on count I and to a consecutive five-year term

on count III.  The sentences were not appealed.

        In his petition, the petitioner asks the court to vacate the

sentence imposed on count III under 18 U.S.C. § 924(c)(1) based

on the decision of the United States Supreme Court in Bailey v.

United States, ___ U.S. ___, 116 S. Ct. 501 (1995).  The

petitioner claims that he neither used nor carried the gun in

question as those terms have been defined in <u>Bailey</u>.  The
government has responded to the petition and contends that the
petitioner used and carried the gun during and in relation to a
drug trafficking offense.

The court finds that under the circumstances of this case,
the <u>Bailey</u> decision must be applied retroactively.  <u>See</u> <u>Abreu v.
United States</u>, 911 F. Supp. 203 (E.D. Va. 1996); <u>Sanabria v.
United States</u>, No. CV-95-159-JAF, 1996 WL 78181 (D.P.R. Feb. 15,
1996); <u>United States v. Turner</u>, No. 91-CR-211L, 1996 WL 42072
(W.D.N.Y. Feb. 1, 1996).  Therefore, the court will apply the
standards set forth in <u>Bailey</u> to the facts of this case as
revealed in the record.

When the petitioner entered his guilty plea to count III at
a hearing held on September 16, 1991, the judge (former United
States District Court Judge Norman Stahl) stated:

> THE COURT:  Now, in -- Count Three charges on or about
> the first day of March, 1991, in the District of New
> Hampshire, you, Curtis Koch, knowingly used and carried
> a firearm, to wit:  A Mossberg 20 gauge pump action
> shotgun, serial number J629848, during and in relation
> to a drug trafficking crime for which you may be
> prosecuted in a court of the United States, to wit:
> conspiracy to possess within intent to distribute
> Marihuana, pursuant to Title 21, United States Code,
> Sections 846 and 841(b)(1)(D), again all in violation
> of Title 18, United States Code, Section 924(c)(1).  In
> other words, you possessed a gun in connection with the
> narcotics crime; is that correct?
>
> THE DEFENDANT:  Yes, your Honor.

THE COURT:  And that was that Mossberg 20 gauge?

THE DEFENDANT:  Yes.

United States v. Koch, Transcript of Plea Hearing ("Tr. Plea") at 7-8, September 16, 1991.

When asked by the judge to set forth what the government would prove in this case, Assistant United States Attorney Robert Veiga stated in part, as follows:

> On the day of the transaction in question, Mr. Miller was in possession of two large hockey equipment bags which he used to hold the marijuana for transport on -- March 1st, 1991 was the day which was set for the actual transfer of the marijuana.  On that day surveillance teams set up in Pepperell, Mass. across from a garage operated by Mr. Miller.  Surveillance teams were set up in Nashua, New Hampshire at two locations, the Denny's Restaurant at the Nashua mall and Somerset Apartments in Nashua.  On the morning of March 1st, Mr. Koch and Mr. Miller were seen together in each other's company in Pepperell, Massachusetts.  They were watched driving from Pepperell, Mass. up Route 3 to the Denny's Restaurant in Nashua.  There they met the cooperating individual and those meetings -- and that meeting between the cooperating individual and Mr. Koch and Mr. Miller was videotaped.  Some still photographs were taken.  It was otherwise observed by the DEA and members of the New Hampshire Drug Task Force.
>
> At that location Mr. Koch and Mr. Miller indicated to the cooperating individual that they had the balance of money which was required to pay for the shipment of marijuana.  That was $115,000 in cash.  That $115,000 in cash was possessed in a black bag with pink straps by Mr. Koch in his own motor vehicle, and I should point out Mr. Koch and Mr. Miller arrived that morning in separate motor vehicles.  The plan that had been agreed to by the parties was that the cooperating individual would see -- look at the money at the Denny's location and that Mr. Koch would remain at that

3

location with the money and thereafter Mr. Miller and the cooperating individual would driver [sic] to the Somerset Apartments location where the marijuana would be transferred back -- would be transferred to Mr. Miller and then thereafter, fictionally, the CI was supposed to go back and pick up the money from Mr. Koch.

The cooperating individual did in fact observe the money in Mr. Koch's possession in black bags, as I indicated, with pink straps, which was the same type of container that the DEA agents had seen Mr. Koch with that morning, leaving Mr. Miller's garage in Pepperell, Mass. Immediately after the cooperating individual and Mr. Miller left the Denny's location, leaving Mr. Koch and the $115,000 behind, the DEA agents effectuated the arrest of Mr. Koch.

Mr. Koch was found not only to have the $115,000 in cash, but also was found to possess a Mossberg 20 gauge shotgun, which was laid across the back seat of his vehicle covered by a blanket. At the time of his arrest three shotgun shells fell from his clothing during the course of the arrest. So even though the gun was not loaded at the time, Mr. Koch was in possession of ammunition for the weapon on the date in question. Subsequently, and in furtherance of the conspiracy, Mr. Miller and Mr. -- and the cooperating individual went to Somerset Apartments. Mr. Miller and the cooperating individual entered a recreational vehicle. Mr. Miller sliced open one of a set of four bails of marijuana, smelled it, looked at it, and then agreed to accept delivery, placed the four bails of marijuana into the two hockey equipment bags that he had, left the recreational vehicle indicating to the agents that were contained therein he would look forward to seeing them in April, and April was the time that the cooperating individual had told Mr. Koch and Mr. Miller they could get a second shipment of marijuana. Mr. Miller then left the recreational vehicle, walked back to his vehicle, and on the way there he was arrested and he also was found to be in possession of a .38 caliber revolver in the front seat of his vehicle covered by a jacket.

4

That would be the evidence in this case with respect to both the conspiracy to distribute controlled substances charge and the possession of a firearm in relation to a drug offense charge, and also with respect to the forfeiture indictment, and Count Two, indicating the $115,000 was used for the purpose of facilitating the commission of this offense. And I would indicate to the Court and submit to the Court that if this evidence were presented to the jury, the jury would be able to find beyond a reasonable doubt that Mr. Koch is guilty as the indictment charges him.

THE COURT: Mr. Koch, you've heard the Assistant United States Attorney with the recitation of what the Government is prepared to prove in this case. Did you do the things which he set forth?

THE DEFENDANT: Yes, your Honor.

THE COURT: You're guilty of those charges?

THE DEFENDANT: Yes, your Honor.

Tr. Plea at 25-28.

The presentence report prepared in this matter contained the following paragraphs:

12. At about 10:00 a.m. on March 1, 1991, Miller and Koch, in separate vehicles, drove from Pepperell, Massachusetts to the parking lot of the Nashua, NH mall. The defendants then displayed $115,000 in cash to the informant. Koch thereafter remained at the mall with the money while Miller and the informant drove to a recreational vehicle parked near an apartment complex on Somerset Boulevard in Nashua to view and take possession of the marijuana. Once at the deal site, Miller cut into a bale of marijuana and he touched and smelled the product being offered for sale by undercover officers. Miller subsequently took possession of the marijuana, placing four bales into two large hockey equipment bags. He then left the recreational vehicle and walked towards his own vehicle. At that time, he was arrested and taken

5

into custody. Taken from Miller at the time of his arrest, was a small utility knife he had used to cut open one marijuana bale for a sample. A subsequent search of Miller's vehicle yielded (from the passenger side seat) an Italy .38 caliber revolver (serial number A7101) loaded with five rounds of ammunition.

13. While Miller was taking custody of the marijuana, Koch was arrested at the Nashua Mall parking lot. Seized as part of that arrest were $115,000 cash, an unloaded Mossberg 20 gauge pump action shotgun bearing serial number J629848, and three 20 gauge shotgun shells from Koch's person (one Peter's Express #6 shot, one Peter's Express skeet load, and one Federal #4 Steel Magnum).

14. In an interview with the probation officer, Koch admitted responsibility for the offense. He emphasized that the shotgun he possessed was unloaded, located in the back seat of his vehicle, and contrary to the Government's representations, not covered by a blanket. He added that he is an avid sportsman who had registered the gun properly and used it only in skeet shooting and bird hunting. Otherwise, he acknowledged the accuracy of the facts of the case presented by the Government.

Presentence Report dated May 15, 1992, at 4.

During the course of the sentencing hearing held on May 18, 1992, defense counsel informed the judge that the defendant was an avid sportsman who engaged in skeet shooting, turkey shooting, and deer hunting with his father, that he had a gun since he was eight years of age, and that guns and hunting were part of his life (United States v. Curtis Koch, Transcript of Sentencing Hearing ("Tr. Sentencing") at 8, May 18, 1992). Defense counsel went on to state:

6

Therefore, Mr. Koch determined that it was appropriate for him to cooperate as best as he could. He entered the guilty plea. The fact of the matter is this gun was in the back seat of a two-seat vehicle. He was sitting in the front. It was in the back seat on the floor. It was unloaded. He had all intentions after he was -- to transfer the money that he had. And, incidentally, he had no drugs on his person or in his vehicle. He merely had cash that he was to deliver to Rich, who was a friend of his. There would be no need for him to have a gun with him. There was no fear someone would come and cause him harm. The person that was meeting him was someone he had known for a long time and trusted. Nonetheless, he had the gun in the back and he had some ammunition in his left-hand coat pocket. It was bird shot, however, and the reason that's significant is in comparison that -- to the other guns he owns for shooting, this was the least -- the least powerful, and the one that could cause the least amount of harm. But he didn't anticipate any difficulties or problem because he was meeting someone that he knew, someone that he trusted.

Also, if he had intended to use the vehicle -- I'm sorry -- to use the gun, it certainly should have been loaded. It should have been in the front seat, which would allow -- he would have to get out of the vehicle, push the front seat up, get it out of the floor of the back seat, then load it and use it. That wasn't his intent at all. His intent was to go skeet shooting after he had done this. He had on his hat that he would normally use for that purpose, he called his lucky hat, and the Government has that hat. He had the gun and the ammunition and they were not together.

Tr. Sentencing at 8-10.

The government pointed out that while the petitioner argued he had the gun in his car for the purpose of skeet shooting, there was a case for the weapon located in the trunk of the vehicle. While the government claimed that the gun was covered with a blanket, the petitioner maintained that the blanket did

not cover the gun but rather was a blanket kept in the back seat for use by his child. The government in its response to the petition does not appear to dispute the petitioner's position concerning the blanket.

In discussing the "use" and "carry" prongs of § 924(c)(1), the Supreme Court in Bailey stated:

> We assume that Congress used two terms because it intended each term to have a particular, nonsuperfluous meaning. While a broad reading of "use" undermines virtually any function for "carry," a more limited, active interpretation of "use" preserves a meaningful role for "carries" as an alternative basis for a charge. Under the interpretation we enunciate today, a firearm can be used without being carried, e.g., when an offender has a gun on display during a transaction, or barters with a firearm without handling it; and a firearm can be carried without being used, e.g., when an offender keeps a gun hidden in his clothing throughout a drug transaction.

116 S. Ct. at 507.

In describing activities that constitute "use," the court stated:

> The active-employment understanding of "use" certainly includes brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm. We note that this reading compels the conclusion that even an offender's reference to a firearm in his possession could satisfy § 924(c)(1). Thus, a reference to a firearm calculated to bring about a change in the circumstances of the predicate offense is a "use," just as the silent but obvious and forceful presence of a gun on a table can be a "use."

Id. at 508.

8

However, the court in <u>Bailey</u> clearly rejected the position taken by the government that placement of a firearm at or near the site of illegal drug activity in order to provide an offender with a sense of security constitutes use stating that "the inert presence of a firearm without more is not enough to trigger § 924(c)(1)." <u>Id.</u> at 508.

Considering all of the circumstances revealed by the facts in this case, the court finds that petitioner was not actively employing the gun during and in relation to the drug trafficking offense under the interpretation of "use" set forth in the <u>Bailey</u> decision.

However, the Supreme Court noted in <u>Bailey</u>:

> While it is undeniable that the active-employment reading of "use" restricts the scope of § 924(c)(1), the Government often has other means available to charge offenders who mix guns and drugs. The "carry" prong of § 924(c)(1), for example, brings some offenders who would not satisfy the "use" prong within the reach of the statute.

<u>Id.</u> at 509.

In furtherance of the conspiracy charged in count I, the petitioner, with three shotgun shells in his pocket, drove his car, containing his unloaded shotgun on the floor of the back seat and a bag with the purchase money for the marijuana deal, from Pepperell, Massachusetts, to Denny's Restaurant in Nashua, New Hampshire, to meet a cooperating individual ("CI") and a

9

codefendant (Miller). As planned, after the petitioner met with the CI and Miller, the CI looked at the money. The CI and Miller then left to go to an apartment in Nashua so the marijuana could be transferred to Miller. Once the transfer was made, the CI was to return to pick up the money from the petitioner. The petitioner remained behind with the money, as planned, and was arrested immediately after the CI and Miller left.

It is not necessary that an offender actually have a gun upon his body or in hand in order to be carrying the weapon. If, as in this case, the gun is in the passenger compartment of a vehicle that is being driven and used by an offender in connection with activities that are in furtherance of a drug conspiracy, then the offender is carrying the gun as that term is used in § 924(c)(1). See United States v. Freisinger, 937 F.2d 383, 387 (8th Cir. 1991) ("common usage of `carries' includes `carries in a vehicle'"); United States v. Ross, 920 F.2d 1530 (10th Cir. 1990). The court finds, based on a consideration of the totality of the circumstances, that the petitioner's actions constituted carrying the gun in question during and in relation to the drug conspiracy. 18 U.S.C. § 924(c)(1).

10

The petition is dismissed.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

May 10, 1996

cc:  Curtis Koch, pro se
     Peter E. Papps, Esquire

11